CIESLEWICZ, by John D. Finerty, her Guardian ad Litem, and another, Plaintiffs-Respondents, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY, and others, Defendants-Appellants.

*No. 76–050. Argued June 6, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 595.)

For the appellant there were briefs by *Tom E. Hayes, Edward A. Hannan,* and *Hayes & Hayes* of Milwaukee, and oral argument by *Tom E. Hayes.*

For the respondents there was a brief by *John D. Finerty, Charles D. Clausen,* and *Friebert & Finerty* of Milwaukee, and oral argument by *Mr. Clausen.*

Brief Amicus Curiae for Wisconsin Academy of Trial Lawyers was filed by *William L. McCusker* of Madison, *Theodore B. Hertel, Jr., Irving D. Gaines,* and *David A. Saichek* of Milwaukee.

HEFFERNAN, J.   This case presents the question whether a homeowner's liability insurance policy which covers "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury" obligates the insurer to pay treble damages imposed upon the insured pursuant to statute.

On August 30, 1974, nine-year-old Lynn J. Cieslewicz was bitten by a German Shepherd dog owned and cared for by Richard T. Fakler and his father, Robert A. Fakler, respectively. For purposes of this appeal, it is unnecessary to recount the details of the incident. It is sufficient to state that Lynn Cieslewicz was bitten several

times, that 41 sutures were required to close her wounds, that the dog had previously bitten another young girl without apparent provocation, and that the Faklers had knowledge of the previous incident.

This action was commenced on January 16, 1975, to recover damages for the injuries sustained. The case was tried before a jury, which returned a verdict in favor of plaintiff Lynn Cieslewicz in the amounts of $2,500 for past personal injury and $6,500 for future disability. The jury awarded plaintiff Martin J. Cieslewicz, Lynn's father, $265.76 for past medical expenses and $1,500, subsequently reduced by the trial court to $800, for future medical expenses. The total compensatory damages awarded were $10,065.76. Pursuant to sec. 174.04, Stats.,[1] these damages were trebled by the trial court.

Judgment was entered against the defendants, Robert Fakler and Richard Fakler, in the amount of $30,827.94, including interest, costs, and disbursements, and against the defendant, Mutual Service Casualty Insurance Company, in the amount of $25,000, the limit of personal liability coverage under its homeowner's insurance policy issued to Robert Fakler, plus costs and disbursements of the action.

The compensatory damages awarded by the trial court are not challenged on this appeal, nor is the applicability

---

[1] Sec. 174.04, Stats., provides:

"*Treble damages.* Any person suffering personal injury by any dog in the manner set forth in s. 174.01 may give notice to the owner or keeper of the act done, and if after such notice such dog shall injure any person, or wound or kill any horses, cattle, sheep or lambs, or do any other mischief or injury the owner or keeper shall be liable to pay to the person injured thereby treble damages."

Sec. 174.01, Stats., provides in pertinent part:

"*Dogs may be killed.* Any person may kill any dog . . . that may suddenly assault the person while peacefully walking or riding and while being out of the inclosure of its owner or keeper."

of sec. 174.04, Stats., contested. However, the insurer appeals from that portion of the judgment which awarded multiple damages against it. It is the position of the insurer that the terms of its policy provides coverage for compensatory damages only and that indemnification against statutory treble damages is contrary to public policy.

The initial issue is whether the terms of the policy extend coverage for statutory treble damages. The policy provides:

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. The Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient. This Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of this Company's liability has been exhausted by payment of judgments or settlements."

By this provision, the insurer promises to pay *all sums* which the insured becomes legally obligated to pay as damages *because of* bodily injury. There can be no serious dispute that the treble damage award was a sum which the insured was legally obligated to pay as damages. The only real question is whether the insured was obligated to pay the damages "because of bodily injury."

A similar issue arises when a jury awards common law punitive damages (as opposed to the statutory multiple damages involved in this case). The issue then presented is whether the insurance policy extends coverage to common law punitive damages and whether these damages are awarded "because of bodily injury." Courts in other jurisdictions have divided on this question, but the

greater weight of authority holds that language similar to that involved in this case extends coverage to punitive damages. *See generally,* Annot., 20 A.L.R.3d 343, sec. 2 (1968). We are persuaded that the cases holding that the policy covers punitive damages are the better reasoned opinions.

In *Carroway v. Johnson,* 245 S.C. 200, 204–05, 139 S.E.2d 908 (1965), the Supreme Court of South Carolina said:

"The policy here is a voluntary policy and defendant agreed to pay 'all sums' which the insured 'shall become legally obligated to pay as damages' because of bodily injury. The punitive damage award is a sum which the insured is legally obligated to pay as damages. However, the question remains: Are punitive damages, 'damages because of bodily injury?' . . . .

". . . .

"The policy under consideration did not limit recovery to actual or compensatory damages. The language of the policy here is sufficiently broad enough to cover liability for punitive damages as such damages are included in the 'sums' which the insured is legally obligated to pay as damages because of bodily injury within the meaning of the policy."

A similar view was taken by the Supreme Court of Idaho in *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.,* 511 P.2d 783, 789 (Idaho 1973):

"We point out that the policy provisions herein make no distinction as between actual and punitive damages. Punitive damages are not specifically excluded from the policy language. Under the provision of the policy the company promises to pay on behalf of the insured *all* sums which the insured shall be legally obligated to pay as *damages* caused by the use of any automobile. The law is clear in Idaho that insurance policies are to be construed most liberally in favor of recovery . . . . Since policies are written by companies without any arms length bargaining between the parties all ambiguities are resolved in favor of the insured. . . . Clearly absent

any public policy to the contrary, this controversy must be resolved in favor of the insured."

It is the infliction of bodily injury which gives rise to the cause of action. Once the cause of action arises, punitive or multiple damages are awarded in connection with, or because of, the injuries incurred. *Ohio Casualty Insurance Co. v. Welfare Finance Co.*, 75 F.2d 58, 59 (8th Cir. 1934), *cert. denied,* 295 U.S. 734.

The rationale of these cases is in accord with the holdings of this court which have construed coverage claims in insurance policies. On its face, the policy provision is broad enough to cover multiple damages. What was said in *Insurance Co. of North America v. Universal Mortgage Corp. of Wis.*, 82 Wis.2d 170, 178, 262 N.W.2d 92 (1978), is applicable here:

"We have frequently stated that no insurance policy should be rewritten by a court to bind an insurer to a risk which it did not contemplate and for which it has not been paid. *Wisconsin Builders, Inc. v. General Insurance Co.*, 65 Wis.2d 91, 103, 221 N.W.2d 832 (1974). In the instant case, however, it appears to us that the plaintiff, Insurance Company, would have us rewrite the policy to exonerate it from a risk which it contemplated and for which it has been paid. The most that can be said in favor of the insurance company's position is that the language upon which it relies is ambiguous or obscure. As *Wisconsin Builders, supra,* stated, however, any ambiguity or obscurity in the language must be construed against the insurance company which drafted the policy and any provision tending to limit the liability of the insurance company should be construed most strongly against the insurance company."

We have also held that an insurance policy should be construed as it would be understood by a reasonable person in the position of the insured. *Garriguenc v. Love,* 67 Wis.2d 130, 226 N.W.2d 414 (1975). The language

of the policy is to be given the common and ordinary meaning it would have in the mind of a lay person. *Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514 (1976). A reasonable person in the position of the insured would believe that the language of the policy provides coverage against all civil liability arising out of an occurrence resulting in bodily injury. *Harrell v. Travelers Indemnity Co.*, 279 Ore. 199, 567 P.2d 1013, 1015 (1977); *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 648, 383 S.W.2d 1 (1964).

Essentially, what the insurer has done in this case is to "sandbag" its own insured by using a provision which is phrased in very broad terms and which gives the insured the reasonable impression that protection is afforded. Upon presentation of the claim, however, the insurer has attempted to avoid responsibility for part of the damages, on the theory that multiple damages are not within the terms of the policy. In accordance with the principles adopted by this court in construing a policy of insurance, we hold that the multiple damages are included in the coverage clause of the policy.

As insurer is, however, not required to offer a policy that reasonably can be construed to provide coverage for multiple damages. An insurance company is free to insert an exclusion clause which expressly and unambiguously denies such coverage. It may be expected, however, that such a clause will not be widely used, however, because competing insurance agents would educate the public as to the limitations of such a clause, and many buyers would refuse to accept it. 7 Appelman, *Insurance Law and Practice*, sec. 4312, p. 137 (1962).

Because we conclude that the insurance contract is broad enough to provide coverage for the multiple damages at issue in this case, we address the question whether public policy prohibits contracts of insurance

which indemnify the insured against liability for statutory multiple damages.

■ Most of the cases cited by the parties deal with a related, but distinct, question: Whether public policy prohibits insurance coverage for common law punitive damages. We have held that multiple damages imposed pursuant to statutes such as sec. 174.04, Stats., are punitive in nature. *John Mohr & Sons, Inc. v. Jahnke,* 55 Wis. 2d 402, 198 N.W.2d 363 (1972) ; *Oconto County v. Union Mfg. Co.,* 190 Wis. 44, 208 N.W. 989 (1926). Thus, for example, it is impermissible to award punitive damages *in addition* to statutory multiple damages. *John Mohr & Sons, Inc. v. Jahnke, supra.* It does not follow, however, that multiple damages are to be considered the equivalent of punitive damages for all purposes and in all contexts. The prerequisites for the imposition of statutory multiple damages are less stringent than those for the imposition of common law punitive damages. Ghiardi, *Punitive Damages in Wisconsin,* 60 Marq. L. Rev. 753, 775 (1977).

■ Courts in other jurisdictions are sharply divided on the question whether public policy prohibits insurance coverage against common law punitive damages. *See generally,* Annot., 20 A.L.R.3d 343, sec. 3 (1977). A number of cases, and most legal writers on the subject,[2]

[2] *See,* Kendrigan, *Public Policy's Prohibition Against Insurance Coverage for Punitive Damages,* 36 Ins. Counsel J. 622 (1969) ; Gonsoulin, *Is an Award of Punitive Damages Covered under an Automobile or Comprehensible Liability Policy?* 22 S.W.L.J. 433 (1968) ; Marks, *Automobile Insurance Coverage for Punitive Damages,* Ins. L. J. 480 (1966) ; Note, *Public Policy Prohibits Insurance Indemnification Against Awards of Punitive Damages,* 63 Col. L. Rev. 949 (1963) ; Oleck, *Damages to Persons and Property,* sec. 269, p. 540 (1961) ; Note, *Insurance Coverage and the Punitive Award in the Automobile Accident Suit,* 19 U. Pitts. L. Rev. 144 (1957) ; Note, *Exemplary Damages in the Law of Torts,* 70 Harv. L. Rev. 517 (1957).

conclude that the availability of insurance coverage for punitive damages undermines the policies behind punitive damages, and that therefore such insurance coverage is contrary to public policy. The purposes of punitive damages are to punish the wrongdoer and to deter others from like conduct. *Kink v. Combs,* 28 Wis.2d 65, 81, 135 N.W.2d 789 (1965). Punitive damages are also intended to have the effect of punishing types of conduct which are oppressive and hurtful to the individual but which frequently go unpunished by the public prosecutor. *Kink v. Combs, supra,* 28 Wis.2d at 80.

A leading case espousing the view that insurance coverage would defeat the purposes of punishment and deterrence is *Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir. 1962). There, Judge Wisdom stated that the public policy against coverage is intended:

". . . to make effective the discouragement of wrong-doing by the imposition of punishment. Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

"The policy considerations in a state where . . . punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since

the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committted by the insured." (at 440–41).

Not all courts have adopted the reasoning of *McNulty*. *See, e.g., Lazenby v. Universal Underwriters Insurance Co., supra; Price v. Hartford Accident & Indemnity Co.,* 108 Ariz. 485, 502 P.2d 522 (1972); *Abbie Uriguen Oldsmobile Buick, Inc., supra; Harrell v. Travelers Indemnity Co., supra.* Indeed, since 1970, the trend seems to be toward finding no public policy prohibition and against the *McNulty* analysis. 28 Hastings L.J. 431, 432 (1976).

We need not, and do not, decide in this case whether public policy prohibits insurance against common law punitive damages. This case involves statutorily imposed multiple damages,[3] which must be distinguished from common law punitive damages.

The first important distinction between common law punitive and statutory multiple damages is the differing levels of culpability required to warrant the additional damages. In the context of an intentional tort, punitive damages are awarded when the tort has the character of outrage frequently associated with crime. *Kink v. Combs, supra,* 28 Wis.2d at 79.[4] In the multiple damages

[3] Other examples of statutory multiple damages include sec. 174.03, Stats. (dog bite, double damages), and sec. 133.01 (unfair trade, treble damages).

[4] We note that it is an open question whether punitive damages may be awarded in Wisconsin in the context of a negligent tort. When we abolished the doctrine of gross negligence in *Bielski v. Schulze,* 16 Wis.2d 1, 18, 114 N.W.2d 105 (1962), we used language that can be read as suggesting that punitive damages are inappropriate in negligence cases. The commentators, however, have not read this language as precluding punitive damages in those cases. Walther & Plein, *Punitive Damages: A Critical Analysis: Kink v. Combs,* 49 Marq. L. Rev. 369, 374 (1965); Ghiardi, *supra,* 60 Marq. L. Rev. at 758.

statutes, however, no particular state of mind or outrageous character of the conduct is necessary at all. For the purpose of awarding treble damages under sec. 174.04, Stats., all that is necessary is that it be shown that the dog had previously injured someone under the statutorily defined circumstances and that the owner had notice of the previous injury. Whether the dog is known to be violent and vicious, so that the owner's conduct in not restraining the dog is extreme recklessness, or whether the dog is normally gentle, but has had one prior incident, makes no difference for the purpose of the statute. Treble damages are awarded in either case.

Another distinction between common law punitive and and statutory multiple damages is in the mode of assessment. Common law punitive damages are assessed in the discretion of the jury, and the plaintiff has no absolute entitlement to punitive damages in any case. Ghiardi, *supra,* 60 Marq. L. Rev. at 763. Multiple damages, on the other hand, are assessed whenever the statutory requirements are met, and the plaintiff is entitled to multiple damages on that showing alone.

A final distinction rests in the differing methods of calculation of the damages. In the case of common law punitive damages, the wealth of the defendant must be considered, as this has an important bearing on the sufficiency of punishment. Ghiardi, *supra,* 60 Marq. L. Rev. at 768. It is referred to as "smart money" in the sense that its purpose is to hurt or smart. Wealth, however, has nothing to do with the assessment of statutory multiple damages. Rich and poor pay the same amount, as the statute provides simply for an automatic multiplier of the compensatory damages. In this case, on an arbitrary and statutory basis, the damages are trebled.

The distinctions between common law punitive and statutory multiple damages convince us that the two forms of additional damages must be treated separately, each on its own merits, and for that reason, we decide in this case only that insurance against statutory multiple damages is not contrary to public policy. On the other hand, it would be an exercise in semantics to attempt to define away the problem posed by the *McNulty* case by referring to multiple damages as "augmented compensatory" damages, or some such euphemism. Clearly, multiple damages do retain elements of punishment and deterrence, even though multiple damages are not for all purposes equivalent to common law punitive damages. To this extent, we recognize that allowing insurance against these damages may have the effect of softening the blow of both the punitive and deterrent aspects of these damages. We are urged to hold, on this basis, that insurance against multiple damages is contrary to public policy. We decline to do so.

"Public policy" is no magic touchstone. This state has more than one public policy. Another and countervailing public policy favors freedom of contract, in the absence of overriding reasons for depriving the parties of that freedom. Still another public policy favors the enforcement of insurance contracts according to their terms, where the insurance company accepts the premium and reasonably represents or implies that coverage is provided. *Cf., Price v. Hartford Accident & Indemnity Co.*, 502 P.2d at 524.

Moreover, even conceding that allowing insurance coverage for multiple damages may reduce the elements of deterrence and punishment, insurance coverage by no means destroys these elements. Even if the treble damages are paid by an insurer, the fact that a dog attacking another person may be killed under sec. 174.01, Stats., may provide both deterrence and punishment. In

addition, it may be expected that insurance companies will raise insurance rates for dog owners, or at least for those dog owners whose dogs have already attacked a person. Under these circumstances, insurance does not necessarily shift the burden from the individual dog owner to the general public, but simply spreads the burden out among similarly situated persons, while avoiding the devastating financial impact on particular individuals. The latter consideration is the very essence of the public policy which encourages and accepts insurance. Finally, there is always the possibility, as happened in the instant case, that the treble damages will exceed the policy limits, so that the owner of the dog is obligated to pay part of the damage award in any event. *Cf., Price v. Hartford Accident & Indemnity Co., supra.*

We conclude that public policy does not prohibit insurance coverage for statutorily imposed multiple damages. As was said by the Supreme Court of Oregon in *Harrell v. Travelers Indemnity Co., supra,* 567 P.2d at 1021–22:

> "It is one thing for an insurance company to write a policy with provisions which exclude liability for punitive damages and to ask that this court construe and apply such policy provisions. It is quite another thing, however, for an insurance company which has written and issued an insurance policy in terms which include coverage for punitive damages—presumably at a premium which the insurance company believed to be sufficient as consideration for such coverage—to ask this court to relieve it from such liability under its own insurance contract by a judicial declaration that the contract is void for reasons of 'public policy.' " [5]

In reaching this conclusion, we balance the various factors present in this case. In so doing, we have not

[5] We cite this language only by way of analogy, since we deal here only with the multiple damages issue, and not the punitive damages issue discussed by the Supreme Court of Oregon.

been convinced that there is any overriding public policy reason for voiding part of that part of the insurance contract which the policyholder paid for on the reasonable belief that coverage was afforded. *Cf., Lazenby v. Universal Underwriters Insurance Co., supra,* 214 Tenn. at 648, 383 S.W.2d at 5.

We conclude that the policy of insurance afforded coverage for the statutorily imposed damages and that such coverage is not contrary to public policy.

*By the Court.*—Judgment affirmed.