HENRI'S FOOD PRODUCTS COMPANY,
INC., a domestic corporation,
Plaintiff,

v.

The HOME INSURANCE COMPANY, a
foreign corporation, Defendant and
Third-Party Plaintiff,

v.

STAUFFER CHEMICAL COMPANY, a
Connecticut Corporation,
Third-Party Defendant.

No. 77–C–738.

United States District Court,
E. D. Wisconsin.

Aug. 7, 1979.

Raymond R. Krueger, Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., for plaintiff.

Kenneth M. Kenney, Kenney, Krembs, Fellows & Wolfe, Milwaukee, Wis., for Home Ins.

Daniel R. Riordan, Riordan, Crivello, Sullivan & Carlson, Milwaukee, Wis., for Stauffers.

## MEMORANDUM AND ORDER

WARREN, District Judge.

There are currently three motions pending in this action which are ripe for resolution. Plaintiff has moved for partial summary judgment and in response, defendant has moved for summary judgment. In addition, the third-party defendant has moved the Court to dismiss it from the action, or in the alternative, to sever and stay or sever and transfer the third-party cause of action.

The two motions for summary judgment raise the same issue and must be discussed together.

The central issues raised by the summary judgment motion is quite simple. It is whether the loss incurred by plaintiff is covered under the policy of insurance issued by the defendant.

The issue grows out of plaintiff's storage of a quantity of pourable salad dressings in a warehouse in Minneapolis, Minnesota known as Broker's Warehouse. The insurance policy covered goods stored by plaintiff at Broker's.

It is uncontested that the United States government seized numerous food articles in Broker's Warehouse on September 16, 1976. Among the items seized were plaintiff's food products. According to the affidavit of Robert W. Marrs, Compliance Officer for the Minneapolis District of the Food & Drug Administration (FDA), tests were made by the FDA and based upon these tests, the FDA determined that the entire contents of Broker's Warehouse came into contact with certain contaminants, namely the agricultural chemicals eptam, vernam and dyfonate. These chemicals were being stored in Broker's Warehouse and Mr. Marrs affirmed that these chemicals apparently vaporized while being stored and that the vapors of the chemicals permeated the warehouse.

Although plaintiff's products were not sampled by the FDA, plaintiff employed a private concern to perform tests. WARF Institute, Inc. was engaged to test and analyze samples of plaintiff's products being stored in Broker's Warehouse.

The WARF analysis established the following results concerning plaintiff's products. The pourable salad dressing, which was bottled and sealed in cartons, was not itself affected. However, the vapors of the above-named chemicals had penetrated the cartons containing the bottled dressings and had left residues on the following parts of the products tested by WARF: the outside containers (corrugated cartons); the inside packing (inserts to the corrugated box); the

outside of the bottles including the labels; and the caps of the bottles.

In addition to Mr. Marrs, the president of Broker's Warehouse is also of the opinion that the vaporization of the chemicals eptam, vernam and dyfonate occurred in Broker's Warehouse. Furthermore, Mr. Norman D. Kidd, technical director for plaintiff, stated by affidavit that he has personal knowledge of plaintiff's packaging process and that it did not involve the use of the chemicals found on plaintiff's products in Broker's Warehouse.

■ Contrary to the defendant's claim, it appears that the residues found on plaintiff's products were caused by something in Broker's Warehouse. First, this result is logical since numerous food products stored in Broker's Warehouse at the time of plaintiff's received a residue. Second, Mr. Marrs testified by affidavit that the whole warehouse was permeated with the harmful vapor. Finally, defendant offers nothing in opposition to plaintiff's evidence to contradict the evidence. Such a showing is required under Rule 56(e) of the Federal Rules of Civil Procedure.

Before reaching the contract issue, the Court must also consider whether the exposure suffered by plaintiff's products actually caused plaintiff to suffer a loss. Besides the condemnation action brought by the government, plaintiff also asserts it encountered a peril causing its loss. Mr. Robert A. Brachman, in part in reliance on the WARF report, determined that the product should be destroyed for the good of the company's reputation of high-quality products. He attests that he investigated reconditioning as an alternative, rejected it, and ordered the product destroyed. Based upon this, plaintiff claims that it suffered a loss.

As with the chemical residue, defendant has offered no evidence to show that plaintiff could have sold the goods with the residue problem or that the goods could have been reconditioned. However, to the extent, as asserted by defendant, that plaintiff's products were not destroyed by the residue exposure, this affects the damage suffered by plaintiff rather than whether plaintiff's products were harmed. As to the extent that the products were in part or in whole made unsalable, this question goes to damages. It is quite possible that not all of plaintiff's goods in Broker's Warehouse were harmed. However, as established by the WARF study, at least a certain portion were, and this raises the liability issue. The liability issue is the basis for plaintiff's motion for partial summary judgment and defendant's motion for complete summary judgment.

Although in response to defendant's motion for summary judgment plaintiff requested complete relief, i. e., liability and damages, the liability issue will be considered before reaching the damages issue. The question of defendant's liability is actually a question of coverage under a policy of insurance issued by defendant in plaintiff's favor. Of course, plaintiff argues that the policy covers the loss suffered either under the general provisions or under the policy's special coverage endorsement. Before reaching the issues raised by the parties, the Court must first consider the general rules concerning summary judgment and contract interpretation.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broadcasting Co.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Furthermore, Rule 56(e) of the Federal Rules of Civil Procedure provides that a party opposing a motion for summary judgment cannot rely solely on his pleadings, but must instead produce specific facts "showing that a genuine issue of fact exists." As indicated in the factual review set out earlier, plaintiff produced unrefuted facts showing that plaintiff suffered a peril that caused an injury. Defendant offered no contrary evidence as to the fact that the residue contacted plaintiff's products in the warehouse and that this caused injury to plaintiff.

Since plaintiff has established a peril causing injury, and furthermore, that the goods stored in Broker's Warehouse were covered under a contract of insurance issued by defendant, the question remaining for consideration is whether the peril encountered was one within the insurance policy. In the first instance, as indicated earlier, this is a contract question.

■ This action is one arising under the diversity jurisdiction. As such, this Court must apply the law of the state in which it sits, here, Wisconsin. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir. 1977).

■ In Wisconsin, "Generally, the construction of the words and clauses in an insurance policy is a question of law." *Rabinovitz v. Travelers Insurance Co.*, 11 Wis.2d 545, 549, 105 N.W.2d 807, 810 (1960). In an old Wisconsin Supreme Court case, cited with approval in *Rabinovitz*, the court stated:

> ". . . where language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words used in the contract and where such uncertainty exists, but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court." *Thurston v. Burnett & Beaver Dam Farmers' Mutual Fire Ins. Co.*, 98 Wis. 476, 478, 74 N.W. 131, 132 (1898).

Furthermore, the language of the contract is construed most strongly against the insurer, *Bauman v. Midland Union Ins. Co.*, 261 Wis. 449, 53 N.W.2d 529 (1952), with the terms given their common and ordinary meanings as they would have in the mind of a lay person. *Cieslewicz v. Mutual Service Casualty Ins. Co.*, 84 Wis.2d 91, 97–98, 267 N.W.2d 595 (1978).

Based upon these rules of contract interpretation, the Court must determine the effect of the language at three places in the insurance contract.

■ The portion of the contract to be considered is the "standard fire policy" portion (Wis.Stat. § 203.01 [repealed effective June 22, 1976]). Defendant argues that plaintiff's claim is excluded by the portion of the contract titled "Perils NOT Included." This section reads in pertinent part:

> This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: . . . (h) order of any civil authority . . .; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises . . .

Under the section labeled "h", defendant would have the Court consider plaintiff's loss the result of the condemnation. Even without this "act of a civil authority," plaintiff incurred a loss since its products were injured. The loss was not caused by condemnation, but instead, by the chemical residue. As to the section labeled "i", defendant seems to argue that plaintiff's loss, if otherwise covered, should go totally uncompensated because plaintiff failed to salvage the goods. To the extent plaintiff could have salvaged a portion of the goods, that portion of the loss must go uncompensated under this section. However, that portion of damages which plaintiff suffered and which it could not have saved is recoverable under this section notwithstanding plaintiff's alleged neglect. Thus, to the extent plaintiff's neglect increased its loss, that portion is unrecoverable from the insurer under section "i".

■ The next portion of the insurance contract to be considered is on page 5 of the contract under the heading "Perils Insured Against." Plaintiff points to paragraph 6 of that portion of the contract which provides that the policy insures against direct loss caused by "Smoke, meaning thereby only sudden and accidental discharge of smoke from other than industrial operations or agricultural smudging." It is clear that

the vapor which deposited residues on plaintiff's products was produced by a source other than "industrial operations or agricultural smudging." The issue is whether vapor is within the common meaning of the word smoke. *See Cieslewicz, supra.*

In order to resolve the question of whether vapor is smoke, the Court has reviewed the definitions of both of these words in the unabridged version of Webster's Third New International Dictionary. Further, the caselaw definitions listed in West's publication *Words and Phrases* were also examined. Based upon this research and the Court's own understanding of the word "smoke," plaintiff's suggestion that the vapor involved here was smoke, and thus within the policy coverage, must be accepted. Therefore, plaintiff's motion for partial summary judgment on the issue of liability must be granted.

Having determined that the vapor which left a residue on plaintiff's goods was smoke, the Court need not discuss whether plaintiff's peril is covered by the "All Risk" special coverage endorsement portion of the insurance policy. Furthermore, since defendant's motion for summary judgment was based upon its claim of exclusion under the policy of insurance, defendant's motion for summary judgment must be denied.

■ The final matter to be considered with respect to the summary judgment motions is plaintiff's request in response to defendant's motion for complete summary judgment. Since the Court finds that the damages plaintiff suffered are not proven, plaintiff's request must be denied. Although plaintiff has shown that the cash value of the goods stored in Broker's Warehouse was $85,340.00, plaintiff has not shown that it suffered this loss as compensable by the policy. The Court notes that: 1) there is a question of salvage value, if any (e. g., by reconditioning); and 2) that it is quite possible, as suggested by defendant, that the shelf-life of at least some of the goods had expired. Based upon the factual issues on the question of damages, plaintiff's motion for complete summary judgment must be denied. This leaves for consideration the third-party defendant's, Stauffer Chemical Company (Stauffer), motion to dismiss, or sever and stay, or sever and transfer.

■ Stauffer is the company that allegedly stored the chemicals in Broker's Warehouse which vaporized and permeated the entire warehouse. In addition to its appearance in the present litigation, Stauffer is being sued by numerous plaintiffs in an action now pending in Minnesota state court. Stauffer, impleaded by defendant's motion, has made several alternative requests for relief from the impleader. Defendant opposes Stauffer's motion.

The ground relied upon by Stauffer for dismissal is failure to join an indispensable party, Broker's Warehouse. Under Rule 19(a) of the Federal Rules of Civil Procedure,

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If the party cannot be joined, *e. g.,* here Broker's Warehouse is not subject to personal jurisdiction in Wisconsin, then Rule 19(b) sets forth factors to be considered in determining indispensability. These are:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in

the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

As to the first criteria, Stauffer points to the holding of the Minnesota Supreme Court in *Spitzack v. Schumacher*, 308 Minn. 143, 241 N.W.2d 641 (1976).

In *Spitzack*, the court held that if a plaintiff sues one defendant of two potential defendants and defendant one is held not liable, then in a subsequent action by plaintiff against defendant two, defendant two cannot seek indemnity against defendant one because, by the decision in favor of defendant one, there is no common liability. As applied to the present case, Stauffer argues that Broker's Warehouse could be placed in the position of defendant two in the Minnesota action if Stauffer is found not liable to plaintiff. This claim is correct, but there are two methods by which Broker's can be protected.

First, the only obstacle to Broker's involuntary appearance in this action is its lack of jurisdictional contacts with Wisconsin. This problem can be alleviated by notice to Broker's giving it leave to intervene. Second, even if it declines to do so, the crucial common liability dilemma can be alleviated by staying the action between defendant and Stauffer pending the more extensive Minnesota litigation. Therefore, the risk to Broker's can be minimized.

Rather than dismiss the third-party action, the Court will follow the holding of *Aetna State Bank v. Altheimer*, 430 F.2d 750 (7th Cir. 1970) and stay the third-party action. Furthermore, the third-party action will be severed. Severance is particularly appropriate at this point in time since the only issue still existing between plaintiff and defendant is the question of damages.

Therefore, Stauffer's request that this third-party action be severed and stayed pending resolution of the liability issue in the Minnesota action must be and hereby is granted.

In summary, plaintiff's motion for partial summary judgment on the issue of liability must be and hereby is granted. Defend-

ant's motion for summary judgment and plaintiff's motion for summary judgment on the issue of damages must be denied. Stauffer's motion to sever and stay is granted; its motion to dismiss or sever and transfer is denied. Finally, defendant is to notify Broker's Warehouse of the pendency of this litigation to permit Broker's to intervene.

SO ORDERED this 7th day of August, 1979, at Milwaukee, Wisconsin.