**WISCONSIN TRUCK CENTER, INC., Plaintiff,**

v.

**VOLVO WHITE TRUCK CORPORATION and Volvo GM Heavy Truck Corporation, Defendants.**

No. 87–C–824–S.

United States District Court, W.D. Wisconsin.

Aug. 19, 1988.

R. Timothy Muth, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for plaintiff.

Irene Savanis, Jones, Day, Reavis & Pogue, Chicago, Ill., James E. Bauman, Michael Best & Friedrich, Milwaukee, Wis., for defendants.

SHABAZ, District Judge.

Before the court is the motion of defendant Volvo GM Heavy Truck Corporation to vacate judgment in the above-captioned matter on state and federal constitutional grounds pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

For the reasons stated below, the motion is denied.

Volvo GM asserts that the principles of due process, just compensation, equal protection and excessive fines have been violated under both federal and Wisconsin state law. A federal commerce clause violation is also alleged. The Wisconsin Automobile and Truck Dealers Association

(WATDA) has submitted an amicus brief without objection by the parties.

■ Economic regulation such as the Wisconsin Motor Vehicle Dealership Law (WMVDL), Chapter 218.01, Wis.Stats., is presumed to be constitutional. *See Nebbia v. New York,* 291 U.S. 502, 528, 54 S.Ct. 505, 512, 78 L.Ed. 940 (1934); *Kealey Pharmacy and Home Care Service v. Walgreen Co.,* 539 F.Supp. 1357, 1369 (W.D.Wis.1982) aff'd. in part, 761 F.2d 345 (7th Cir.1985); *Noranda Exploration Inc. v. Ostrom,* 113 Wis.2d 612, 628, 335 N.W.2d 596 (1983). In order to overcome this presumtion, a party challenging a regulation must prove it is invalid beyond a reasonable doubt. *See Id.*

■ Courts may not hold that laws are unconstitutional under a due process theory merely because they believe that the legislature has acted unwisely. *See Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963).

The facts in this case have been set forth in great detail in this court's order of April 4, 1988. Pursuant to that order, WTC's motion for summary judgment against Volvo GM was granted as to liability for failure to continue an existing franchise in violation of § 218.01(3)(a)17, Wis.Stats. In the memorandum that accompanied the order, the court articulated its reasons for holding that Volvo GM was a "newly appointed distributor" based primarily upon the procedural history of the case. The court also discussed the corporate relationship between Volvo GM, Volvo White and Volvo AB. Volvo White, a liquidating subsidiary of Volvo GM was relieved of liability under the WMVDL pursuant to the nondiscriminatory market withdrawal theory which was applied to that statute for the first time by this court. On the record before it, the court was unable to determine which trucks if any manufactured and distributed by Volvo GM formed a part of WTC's discontinued franchise (other than those Volvo trucks imported directly from Sweden) and accordingly left that issue and the determination of damages for trial.

On May 17, 1988, following a jury trial, judgment was entered in favor of WTC against Volvo GM for $277,493.01 plus costs and attorney fees. Judgment was also entered in favor of Volvo White dismissing all claims with costs. Volvo GM was required to continue WTC's franchise and was further barred from entering into any other dealership agreement in WTC's area of responsibility until such time as the good cause provisions of § 218.01(3)(f) are satisfied.

## OPINION

### DUE PROCESS

Volvo GM asserts that this court's application of the WMVDL is both arbitrary and irrational and implicates multiple property and liberty interests in violation of the due process clause. This is in essence a substantive due process argument based on the contention that Volvo GM's liability derives solely from the fortuitous filing of a meritless claim against Volvo White. Volvo GM also asserts that the term "newly appointed distributor" in § 218.01(1)(e) is unconstitutionally vague as applied to Volvo GM.

#### Substantive Due Process

A discussion of substantive due process requires the assumption that constitutionally protected rights are affected by a challenged statute. For purposes of this analysis the court assumes without deciding that Volvo GM has constitutionally protected interests in contracting to do business at will, in its property (including trucks and trademark rights), and in its right to be free of state-imposed conditions requiring forfeiture of constitutionally protected rights in return for privileges which are implicated by the WMVDL.

To pass constitutional muster, the MVDL must bear a rational relation to a legitimate government interest. *See Williamson v. Lee Optical Company of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1954); *Vaden v. Maywood,* 809 F.2d 361, 364 (7th Cir.1987). The government interest behind the WMVDL has long been recognized to be the regulation of dealings between economically superior automobile manufacturers and relatively less powerful retail dealers. Such

economic legislation is a legitimate exercise of the police power found in a variety of state and federal statutes. *See Kuhl Motor Co. v. Ford Motor Co.,* 270 Wis. 488, 501, 71 N.W.2d 420 (1955). *See also New Motor Vehicle Board of California v. Orin W. Fox Co.,* 439 U.S. 96, 101 note 5, 99 S.Ct. 403, 407 note 5, 58 L.Ed.2d 361 (1978) (provides list of federal and state statutes with similar purpose).

Volvo GM contends that this court's application of § 218.01(3)(a)17 to hold Volvo GM directly liable as a newly appointed distributor who failed to continue an existing franchise is arbitrary, irrational, and fails the rational relation portion of the due process formula.

■ The court believes that finding the corporate parent of a liquidating wholly-owned subsidiary liable for failure to continue the franchise for a product line transferred from the subsidiary to the parent would be fully consistent and rationally related to the purposes of the WMVDL. It prevents the manipulation of entities within the control of the parent to avoid the statutes clearest prohibitions against unfair terminations. However, this was not the court's holding on summary judgment. The procedural history of this case permitted an automatic statutory stay to go into effect under § 218.01(2)(bd) continuing the legal existence of Volvo White's franchise past the scheduled termination date and into the period in which Volvo GM took over manufacture and distribution of former Volvo White products. Volvo GM's failure to continue the franchise on January 1, 1988 was a statutory violation independent of any wrongdoing the court might have found on the part of Volvo White. Therefore, it was unnecessary to craft any judicial theory of successor liability holding a parent corporation liable for the discontinuation of the dealership network of a liquidating wholly-owned subsidiary regardless of the existence of an administrative stay.

Volvo GM incorrectly asserts that but for WTC's filing of an administrative complaint against Volvo White before the DOT which triggered the automatic stay provision, this court could and would not have found Volvo GM had any liability in this matter. Contrary to defendants' assertion, the court's decision in the related case, *Midstate Truck Service, Inc. v. General Motors Corporation,* 87–C–995–S, March 28, 1988, is not dispositive of this issue. In that case, General Motors was found liable for failure to renew a motor vehicle franchise in violation of 218.01(3)(a)17. Because action was initiated in federal court rather than before the DOT, no automatic stay went into effect continuing the GM dealer franchise through January 1, 1988 when Volvo GM took over distribution of GM's brigadier truck. Had GM Heavy Duty Truck Division been a wholly-owned subsidiary of Volvo GM in the process of liquidating on January 1 rather than an independent truck manufacturer with ongoing viability, this court may have found it necessary to impose liability upon Volvo GM to further the purposes of the WMVDL. However, that case was not and is not before this court.

Defendant's conduct in this case has clearly been directed towards avoiding the provisions of the WMVDL on technical grounds. The purportedly "meritless complaint" filed against Volvo White raised an issue of first impression: the applicability of the WMVDL to motor vehicle franchisors engaging in nondiscriminatory withdrawal from a product market. Taking a cue from a decision of the Commissioner of Transportation and similar issues arising under the WFDL, the court sought to avoid constitutional difficulties by adopting the market withdrawal theory. In this manner, Volvo White was absolved from liability. Such an outcome hardly renders the stay which went into effect the product of a fortuitous and meritless complaint as contended by defendant. The purpose of the stay was to maintain the status quo pending the litigation's resolution.

■ The court holds that a rational relationship existed between the application of § 218.01(3)(a)17 to Volvo GM and the legitimate government interests furthered by the WMVDL. Accordingly, the court de-

clines to vacate the judgment based on substantive due process grounds.

Defendant's suggestion that the Wisconsin formula for measuring compliance with due process principles is more restrictive in this instance is without merit. The rule expressed by the Wisconsin supreme court in *Noranda Exploration, Inc. v. Ostrum, supra,* is provided in a "takings" context and mirrors the federal standard that a valid exercise of police power must bear a reasonable and rational relationship to the furtherance of a proper legislative purpose. *Id.,* 113 Wis.2d at 626, 335 N.W.2d 596. The *Noranda* opinion indicates Wisconsin law includes a presumption of constitutionality which can only be overcome by the opponent's demonstration beyond a reasonable doubt that a statute is invalid. Assuming the *Noranda* standard to be applicable to general substantive due process challenges, nothing in Volvo GM's argument has persuaded this court beyond a reasonable doubt that the judgment entered in this case should be vacated.

### Void For Vagueness

Volvo GM also challenges the validity of § 218.01(3)(a)17 on the grounds that the court's application renders the provision unconstitutionally vague. Defendant protests that neither the statute itself nor past case law or historical context provided adequate notice that a successor corporation like Volvo GM could be held liable as a "newly appointed distributor" of products previously manufactured by its predecessor. Defendant further argues that the court impermissibly used the standard of "equivalency" for determining that Volvo GM was liable as a newly appointed distributor.

■ Vague laws are impermissible for two reasons. First, a person of ordinary intelligence may not have fair notice that particular conduct is prohibited by a vague statute. Second, arbitrary and discriminatory enforcement of vague laws can be prevented only where explicit standards are provided. *See Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1970).

The Supreme Court has cautioned that vagueness standards not be applied mechanically especially to economic regulations:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed · greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982).

The Seventh Circuit has also recognized that economic regulation will often be subject to administrative regulation which will suffice to clarify a standard which might otherwise be uncertain in scope. *See Record Head Corp. v. Sachen,* 682 F.2d 672, 678 (7th Cir.1982).

■ A pure business regulation directed at those assumed to have some expertise and ability to demand clarification is subject to a less stringent standard than a statute of general applicability, even if it has penal attributes, such as a civil forfeiture available for violation of § 218.01(3)(a)17. *See, Id.*

The WMVDL is an ambiguous statute which requires construction in accordance with legislative intent. *Forest Home Dodge, Inc. v. Karns,* 29 Wis.2d 78, 94, 138 N.W.2d 214 (1965). However, the fact that construction is required will not direct the conclusion that a statute is void:

> In 50 Am.Jur., Statutes, page 49, § 473, it is stated:

"A statute is not necessarily void merely because it is vague, indefinite, or uncertain, or contains terms not susceptible of exact meaning, or it is stated in general terms, or prescribes a general course of conduct, or does not prescribe precise boundaries, or is imperfect in its details, or contains errors or remissions, or because the intention of the legislature might have been expressed in plainer terms, and questions may arise as to its applicability, and opinions may differ in respect to what falls within its terms, or because the statute is difficult to execute."

Unless the statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid.

*Id.,* 29 Wis.2d at 94, 138 N.W.2d 214 (citations omitted).

■ Volvo GM had adequate notice that its failure to continue the franchise of its liquidating wholly-owned subsidiary might give rise to liability under § 218.01(3)(a)17. Volvo GM does not contest and in fact does not mention the fact that on January 1, 1988 it assumed distribution of certain Volvo trucks manufactured in Sweden by Volvo AB which had been distributed in the United States by Volvo White prior to that date. The shift in distribution is exactly the prohibited substitution of one "middleman" distributor for another which Volvo GM admits the newly appointed distributor provision covers. There is nothing vague about the statute's application in this sense, even if Volvo White's "termination" as distributor is brought about as the result of its own liquidation rather than AB Volvo's decision to switch from one existing distributor to another.

The extension of the newly appointed distributor label to Volvo GM in its capacity as distributor of other products falling within WTC's Volvo White franchise involves construction in light of the statute's purpose to protect dealers from unfair terminations and other predatory practices of automobile manufacturers. Given the references to this purpose and the practices prohibited by it found in case law arising under the WMVDL, *see, e.g. Forest Home Dodge, Inc. v. Karns, supra,* Volvo GM's protestations that neither historical context nor case law gave it a clue as to the possibility that the statute would be construed to hold it liable are incredulous. The opinion in *Forest Home Dodge* made it clear that the Wisconsin Supreme Court would not permit the statute to be avoided by the manipulation of subsidiary corporations within the control of the parent. *Id.,* 29 Wis.2d at 86–87, 138 N.W.2d 214.

This court found that Volvo GM was a newly appointed distributor of products previously distributed by its liquidating wholly-owned subsidiary because of their relationship and because of the clear potential for manipulation in avoidance of the WMVDL. The decision was not based upon a successor corporation theory as asserted by Volvo GM. Nor did the court reject a successor theory. It simply was an issue not reached by the court. The terms used to describe the way in which Volvo White ceased to be a distributor and in which Volvo GM took over are less important than the construction of the statute in accord with the legislative purpose and the guidelines for construction established by the Wisconsin supreme court in *Forest Home Dodge.*

Volvo GM's final objection that it had no notice it would be considered a "distributor" at all under the WMVDL is totally without merit given the clear statutory definition provided in § 218.01(1)(e).

JUST COMPENSATION

■ As is true of the void for vagueness argument, defendant's just compensation challenge to the validity of this court's judgment seems to be raised in an improper context. The just compensation clause of the Fifth Amendment, applied to the states through the Fourteenth Amendment, provides: "Nor shall private property be taken for public use, without just compensation." If a "taking" is found, the remedy is compensation from the government not relief from the judgment entered against another private party. *See First English Evangelical Church of Glendale*

*v. County of Los Angeles,* —— U.S. ——, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987).

■ Where government regulation is determined to be a legitimate exercise of police power which has not forced some citizens to bear a public burden which should in all fairness be borne by the public as a whole, no taking will be found despite the fact that the plaintiff may be deprived of some incidents of ownership. *Armstrong v. United States of America,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

The most typical example of a "taking" involves the exercise of the power of eminent domain in a condemnation proceeding. *See First English Evangelical, supra,* 107 S.Ct. at 2385. A permanent physical occupation authorized by the government is clearly a taking requiring compensation. *See Loretto v. Teleprompter,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). However, whether a regulation which does not include physical occupation so restricts the use of the claimant's property that compensation is required is a matter for ad hoc inquiry. *Id.*

■ An economic regulation such as the WMVDL is a legitimate exercise of police power which promotes the "peace, safety and welfare of its residents." *See State v. Helwig,* 262 Wis. 299, 302, 54 N.W. 2d 907 (1952). To further health, safety, morals or the general welfare, states are empowered to execute laws even if they adversely affect economic values, such as the case with zoning ordinances. *See Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); *Euclid v. Ambler Company,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed.2d 303 (1926). By looking to the economic impact of the regulation on the claimant, including the extent of interference with distinct investment-backed expectations, and the character of the governmental action with a strong skewing against physical invasion, the burden of a regulation must be evaluated to determine if government regulation has so curtailed property rights that compensation is man-

dated. *See, Penn Central, supra,* 438 U.S. at 123–124, 98 S.Ct. at 2658–59.

The WFDL was held to be a legitimate exercise of the police power in *Kealey Pharmacy and Home Care Services v. Walgreen Company, supra.* In that opinion, Judge Crabb observed that the Fifth and Fourteenth Amendments merely condition the exercise of the police power to regulate the making of contracts and the use of property by requiring the use of a method consistent with due process. *Id.* 539 F.Supp. at 1368–69, *citing Nebbia v. New York,* 291 U.S. at 528, 54 S.Ct. at 512.

There is no question that the WMVDL and this court's application of the statute have affected Volvo GM's right to enter into motor vehicle franchise agreements and to dispose of its property in any manner it sees fit. But the statute provides procedures and standards whereby motor vehicle franchisors can terminate dealers and add new dealers to existing market areas. The ability to "franchise at will" has been curtailed because of the history of abuse of dealers by motor vehicle manufacturers. *See Forest Home Dodge, supra.* The fact that this legislation may be viewed by some, including members of the bench, as unwise "protectionist" legislation which inhibits the free play of the marketplace is no basis for this court to substitute its opinion for the social and economic beliefs of the legislature. *See Ferguson v. Skrupa, supra.*

Volvo GM argues that this court's action in holding it liable under § 3(a)17 has affected a temporary taking of its right to exclude others from its property and its right to dispose of its property in any manner it chooses. Volvo GM further asserts that this taking will become permanent if the judgment is not vacated prior to the payment of damages.

Volvo GM's primary contention in support of its argument that the injunctive relief effects a "taking" in violation of due process is that the court's construction of § 218.01(3)(a)17 requires it to continue Wisconsin Truck's franchise indefinitely or until WTC agrees to a termination. This preposterous construction is completely un-

warranted and has no basis in this court's prior holdings. The provision of § 3(a)17 which states that a newly appointed distributor must continue an existing franchise in the absence of a mutual agreement of cancellation merely covers the moment of transition when an old distributor is terminated and a new distributor takes over. From that point forward, the WMVDL is applicable to the newly appointed distributor just as to any other franchisor who has at its disposal the procedures for termination and establishment of new dealers. Only a ridiculous construction of the statute could give the result suggested by Volvo GM.

Wisconsin's "taking" law as expressed in *Noranda Exploration, Inc. v. Ostrum, supra,* is inapposite. In that case, the court held the statutory provision requiring disclosure of confidential mining information bore no reasonable relation to the statutory goal of informed decisionmaking by state agencies. *Id.,* 113 Wis.2d at 627, 335 N.W. 2d 596. Accordingly, the plaintiff's inability to exclude others from the information which was disclosed to the public at large was deemed to be unconstitutional and unenforceable. The Wisconsin court noted the holding in *Loretto v. Teleprompter, supra,* which held that even where there was a rational relationship between the statute and its purpose enforcement which resulted in a frustration of property rights would require payment of compensation under the Fifth Amendment. The essence of the *Noranda* decision is that a regulation which lacks the rational relationship element is not a legitimate exercise of the police power and a balancing analysis such as that found in *Loretto* is precluded.

The WMVDL's newly appointed distributor provision clearly has a rational relationship to the statute's goal by preventing manufacturers from evading termination provisions by manipulation of distributors. Once the franchise relationship is established, a newly appointed distributor has the benefit of dealer termination and establishment provisions. The newly appointed distributor bears no burden which should be borne by other distributors equally or for that matter by the general public. A newly appointed distributor can continue its business in the state provided the statute is followed. To hold that the WMVDL's ability to regulate distributors in this manner violates the *Loretto* rule that a valid regulation cannot so frustrate property rights that compensation must be made would preclude the legislature from virtually any economic regulation. This court declines to hold that the WMVDL violates the just compensation clause of either the Wisconsin or federal constitutions.

## EQUAL PROTECTION

As noted above, the newly appointed distributor clause merely governs the parties' relationship during a changeover of distributors. At all other times the statute applies to newly appointed distributors as to any other manufacturer or distributor. Volvo GM complains that it was not permitted to make the decision not to continue WTC's franchise for the same economic reasons that Volvo White was permitted to terminate WTC's franchise. However, Volvo White was exempted from liability under the statute only because it was held to have nondiscriminatorily withdrawn from the heavy duty truck market, terminating all franchise relationships in the process. Volvo GM cannot make the same claim. While it may have had justifiable economic reasons for not wishing to keep WTC and others in the Volvo White dealership network such reasons are not sufficient to permit any manufacturer or distributor to terminate or fail to renew motor vehicle dealerships under the standards provided in § 218.01(3)(a)17. Volvo GM's equal protection argument is worthy of no further consideration.

## COMMERCE CLAUSE

Volvo GM continues to misconstrue, misquote and misinterpret the findings of this court in its effort to demonstrate that the WMVDL is unconstitutional. While the court may have referred to the statute as "protectionist" legislation during the course of this litigation those comments were neither legal conclusions nor were they intended to imply that the WMVDL is "protectionist" in the legal sense prohibited

by the commerce clause of the federal Constitution, Article I, Section 8, Clause 3. The WMVDL does not on its face distinguish between interstate and intrastate manufacturers or distributors. Defendant's suggestion that the WMVDL is invalid under the per se rule of *Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), is based solely upon the purported conclusions of this court. As these conclusions do not exist, the argument must fail.

Volvo GM next goes on to build a case based on the faulty premise that the WMVDL prevents it and similarly situated manufacturers from increasing or decreasing the flow of goods in interstate commerce because manufacturers are frozen into moving goods in commerce through one "perhaps perpetual" dealer in an AOR. This argument ignores the procedures established by the WMVDL for termination, relocation and establishment of dealers and this court's determination that nondiscriminatory market withdrawal does not violate the WMVDL. Volvo GM's absurd contention that the WMVDL prohibits "newly appointed distributors" from ever terminating dealers is apparently the heart of this twisted analysis.

▪ Where the per se test is inapplicable, the standard for determining whether a regulation runs afoul of the commerce clause is that enunciated in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Where there is only an "incidental" effect upon interstate commerce, the statute will be upheld unless the burden is clearly excessive in relation to the putative local benefit.

Assuming that there is some "incidental effect" upon the flow of goods in interstate commerce as a result of the WMVDL, it is clear that a legitimate local public interest is effected by the statute in the form of regulations which prevent "unfair," "unprovoked" terminations of dealers "without due regard for the equities." Any minor burden that may result from requiring a franchisor to deal fairly with a dealer is minimal compared to the proven need to protect dealers from avaricious practices.

It is hard to imagine how a less stringent requirement would permit more trucks to flow across state lines. Volvo GM determined the number of dealers it chose to have in each area of responsibility. The ability to add new dealers or replace old ones would merely result in spreading the wealth among more or different dealers. If a franchisor believes the dealer is selling an inadequate number of trucks because of bad business practices, termination and replacement may be possible under the just provocation clause of § (3)(a)17. Defendant's ill-conceived commerce clause attack upon the WMVDL must fail.

## EXCESSIVE FINES

To complete the litany of constitutional sins which Volvo GM proclaims have been engendered by this court's application of the WMVDL in this action is a violation of the excessive fine clause of the Eighth Amendment and Article I, Section 6 of the Wisconsin Constitution. Volvo GM argues that the treble damages awarded under § 218.01(9) constitutes an excessive fine because liability for those damages is based upon the "fortuitous filing of a meritless complaint" and is accordingly disproportionate to the amount.

Unlike many jurisdictions the State of Wisconsin regards punitive damages as penal in nature. *See John Mohr & Sons, Inc. v. Jahnke,* 55 Wis.2d 402, 198 N.W.2d 363 (1972). While multiple damages imposed pursuant to statute have been held to be punitive in nature, *see Cieslewicz v. Mutual Service Casualty Insurance Co.,* 84 Wis.2d 91, 267 N.W.2d 595 (1978), multiple damage awards are not to be considered the equivalent of punitive damages for "all purposes and in all contexts." *Id.* at 99, 267 N.W.2d 595.

Eighth Amendment challenges raised against punitive damages statutes which have been addressed by the courts have been based upon the cruel and unusual punishment clause and rely upon the argument that punitive damage statutes contain no adequate method for limiting multiple future awards in the context of mass tort litigation. *See Palmer v. A.H. Robin Company, Inc.,* 684 P.2d 187, 217 (Colora-

do 1984) (Colorado supreme court held Eighth Amendment arguments apply solely to criminal proceedings). In the one case which has reached the Supreme Court where the excessive fine challenge to a punitive damage award has been properly framed, the issue was raised for the first time in the Supreme Court briefs and was accordingly not reached by the court. *See Aetna Life Insurance Co. v. LaVoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1985). In that action, the plaintiff sought to have a $3.5 million punitive damage award invalidated as excessive in comparison to the $1,650.22 compensatory damage award.

■ In contrast to the aforementioned cases, the size of the treble damage award which Volvo seeks to have stricken was limited by § 218.01(9) as provided by the legislature. Although the award is designed to be in part a deterrent, like RICO and anti-trust awards, this penal aspect cannot transform this civil action into a criminal proceeding governed by the Eighth Amendment. No court has held the excessive fine clause applicable to such an award and this court will not be the first to do so. Additionally, defendant's contention that the award is out of proportion to its wrongdoing because liability is based on a fortuitous filing of a meritless complaint is simply unsupported for the reasons noted in other portions of this opinion. The size of the treble damage award was predetermined by the Wisconsin state legislature as proportional to any wrongdoing in violation of § 218.01(3)(a)17. Having found Volvo GM liable for violating that provision this court will not substitute its wisdom for that of the legislature and hold as a matter of law that the award is excessive.

Accordingly,

## ORDER

IT IS ORDERED that defendant Volvo GM's motion to vacate the judgment entered in this matter on April 4, 1988, is DENIED.