**CITY OF YPSILANTI, Plaintiff,**

v.

**APPALACHIAN INSURANCE COMPANY, a foreign corporation and Law Enforcement Insurance Company, Limited, a foreign corporation, Defendants.**

Civ. A. No. 81–60021.

United States District Court,
E. D. Michigan, S. D.

Sept. 28, 1982.

Walter K. Hamilton, Egnor, Hamilton & Muth, Ypsilanti, Mich., for plaintiff.

Lynn L. Lower, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on cross motions for summary judgment by the plaintiff, City of Ypsilanti, and the defendant, Appalachian Insurance Company (Appalachian). For the reasons given below, the motion of the plaintiff is granted and the motion of the defendant is denied.

## FACTS

The facts are not in dispute. On or about July 8, 1976, the plaintiff contracted with the defendant Appalachian for liability insurance coverage. The written policy was entitled, "Law Enforcement Officers Comprehensive Professional Liability Insurance," and was effective for the period July 8, 1976 to November 1, 1977.[1] It appears that this insurance contract was a renewal of a group insurance policy purchased by the plaintiff from the defendant in several prior years.

On November 1, 1977, plaintiff renewed the policy, but contracted with a new carrier, the defendant Law Enforcement Insurance Company, Ltd. (LEICL). The contract entered into with the defendant LEICL was identical to the policy provided by the defendant Appalachian, and was effective for the period November 1, 1977 to July 30, 1978.

The pertinent language of the contract is as follows:

COVERAGE C. COMPREHENSIVE LIABILITY COVERAGE

Subject to the terms, conditions and limitations hereinafter mentioned, to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of claims for false arrest, assault and battery, false

---

1. There are actually two policies in the record, covering the periods July 8, 1976 to June 30, 1977, and July 1, 1977 to November 1, 1977. However, they are identical in every respect.

imprisonment, malicious prosecution, false or improper service of process, *or other claims growing out of the performance of the duties of law enforcement officers or their employees, during the currency period of this policy.* (emphasis added)

SUPPLEMENTARY PAYMENTS—APPLICABLE TO COVERAGE C

The Company also agrees to pay for the amount of any "costs" (which expression shall mean all investigations, adjustments and *legal expenses* ) incurred in the investigation, adjustment and defense of any claims, suits or proceedings which may be brought against the Insured *within the coverage of this policy* even if such claims, suits, or proceedings are groundless, false or fraudulent. The amounts so incurred under this section are payable in addition to the applicable limits of liability of this policy.

With respect to Coverage C, "Costs" shall not include any operational expenses of the Insured. (emphasis added) [2]

On November 21, 1977, the City of Ypsilanti, its City Manager, its Mayor, and the individual members of its City Council were sued in U. S. District Court by a class of persons residing in state-licensed Adult Foster Care Homes in Ypsilanti. *Doe v. Shutt,* No. 77–72755, (E.D.Mich.) The complaint alleged, *inter alia,* that the City and its officers had, on October 10, 1977, formally resolved to enforce certain housing and zoning ordinances for the purpose of closing down the Adult Foster Care Homes in which the plaintiff class resided. The complaint charged the municipal defendants with selective and discriminatory enforcement of City ordinances in violation of various Constitutional protections, and requested injunctive relief, monetary damages and attorney's fees.

On November 29, 1977, the plaintiff notified its insurers, Appalachian and LEICL,

of the lawsuit and attempted to turn the defense of the suit over to them. Both defendants refused to appear for and defend the City and its officers.[3]

*Doe v. Shutt* was settled in August, 1979. The consent judgment included an injunction against the City and dismissal of the claim for monetary damages. In its final judgment, the district court awarded the plaintiffs $13,427.55 for costs and attorney fees. The defendants, Appalachian and LEICL, refused to pay the award of attorney fees under the terms of the insurance policy. Ultimately, the City paid $12,181.00 to the *Doe v. Shutt* plaintiffs in satisfaction of the district court's attorney fees award. In its second amended complaint, the City alleges that it paid an additional $9,660.59 to its own attorneys to defend the suit.

The City commenced this suit in January, 1981, to recover from the defendant Appalachian the sums the City expended in defense of *Doe v. Shutt* and the sums it ultimately paid in satisfaction of the attorney fees award. Appalachian removed to this court and the defendant LEICL was later added to the suit. Default judgment has been entered against the defendant LEICL in the amount of $21,849.59 ($12,-281.00 plus $9,660.59), plus interests and costs.

DISCUSSION

The first issue is whether the contract between plaintiff and Appalachian, which expired November 1, 1977, is applicable to the *Doe v. Shutt* lawsuit, which was filed on November 21, 1977. The court concludes that it is.

The contract says the defendant will be liable for "claims [against the Insured] growing out of the performance of the duties of law enforcement officers or their employees, *during the currency period of this policy.*" (emphasis added) This language, at the least, implies that the defendant is to be liable for claims which accrue during the effective period of the policy.

**2.** Coverages A and B of the policy are patently not applicable here as they obligate the Insurer to pay damages only for "bodily injury" or "property damage."

**3.** It appears that the defendants, after some time, did agree to defend the suit, but only to the extent of the claim for monetary damages. The defendants continued to refuse to defend against the claim for injunctive relief.

■ Furthermore, the purpose underlying this type of liability insurance coverage dictates that liability not depend on when a complaint is made against the Insured. Liability insurance protects the Insured against its own negligence or misdeeds. This type of policy is purchased with the expectation that acts within the scope of coverage will be protected against if committed within the period of coverage. This type of liability insurance would be illusory indeed if coverage were made to turn on the date a claim or complaint is filed against the Insured, a circumstance utterly beyond the control of the Insured. *See Stine v. Continental Casualty Co.,* 112 Mich. App. 174, 315 N.W.2d 887 (1982). In construing the language of a contract, the court must avoid that which is unnatural or unreasonable if the language will also bear a construction which is fair and reasonable. *B. Siegel Co. v. Wayne Circuit Judge,* 183 Mich. 145, 149 N.W. 1015 (1914).

■ Here, it is plain that plaintiff's claim, if any, accrued against Appalachian during the period the policy was in force. The actions of the City and its officers complained of in *Doe v. Shutt* occurred on, or prior to, October 10, 1977. It was at the City Council meeting on October 10, that the plaintiff and its officers formally resolved to take action against the Adult Foster Care Homes in Ypsilanti by selectively and discriminatorily enforcing certain zoning and housing ordinances, according to the *Doe v. Shutt* complaint. Moreover, it was the October 10 action of the City and its officers that the *Doe v. Shutt* plaintiffs sought to enjoin.

Therefore, the court holds that the insurance contract between plaintiff and Appalachian applies to plaintiff's claims, if any, growing out of the *Doe v. Shutt* lawsuit.

The second issue is whether the claims asserted against the plaintiff and its officers in *Doe v. Shutt* were covered by the insurance contract. This issue has two sub-issues. First, were the *Doe v. Shutt* defendants covered by the policy. Second, did the policy cover claims for equitable relief. The court concludes that both of these questions must be answered in the affirmative.

■ The policy is entitled, "Law Enforcement Officers Comprehensive Professional Liability Insurance." The policy is formally issued to "City of Ypsilanti Police Department, Government Officials and Unit of Goovernment (sic)." Coverage C states that the defendant will be liable to the "Insured" for claims "growing out of the performance of the duties of law enforcement officers or their employees."

The words "Insured" and "Law Enforcement Officers" are not defined in the policy. However, it is clear that "Insured" refers to those to whom the policy was issued, i.e., the "City of Ypsilanti Police Department, Government Officials and Unit of Goovernment (sic)."

As for the words "Law Enforcement Officers", the court concludes that they were intended to cover all those named as defendants in the *Doe v. Shutt* lawsuit. The words "Law Enforcement Officers" connote more than the words "Police Officers." They suggest that all those responsible for enforcing the laws are covered by the insurance policy. Where the policy intended to refer only to the "police," it did so.

Plainly, the City Manager, the City of Ypsilanti, the Mayor of Ypsilanti, and the members of the Ypsilanti City Council are responsible for enforcing the laws. Therefore, claims "growing out of the performance of [their] duties" must be covered by the policy. The *Doe v. Shutt* lawsuit was indisputably a claim against the City and its officers growing out of the performance of the duties of these "law enforcement officers."

■ The second sub-issue is whether the policy covers claims for equitable relief. This is a valiant, but futile, effort by the defendant to cleave nonexistent hairs. The policy simply makes no distinction between claims for monetary relief and claims for equitable relief. The first condition of the policy states:

A. In the event of a claim occurring likely to involve the Company hereunder, the Insured shall not make any payment,

assume any liability or incur any expense without the consent of the Company being first obtained. *The Company shall conduct in the name of the Insured the defense of any claim,* and prosecute in his name for their own benefit any claim for indemnity or damages or otherwise against any third party, and shall have full discretion in the handling of any claim, and the Insured shall give all information and assistance as the Company may reasonably require. (emphasis added)

It is true that Coverage C states that the defendant agrees to pay "all sums which the Insured shall become legally obligated to pay as damages." However, this only states the defendant's responsibility with respect to damage awards. It does not exclude other responsibilities assumed under the contract. Obviously, the defendant could not "pay" for equitable claims. In the usual case, where injunctive relief is sought, the best an insurer can do is defend its Insured against the equitable claim. And it is precisely this which defendant Appalachian promised in Condition A to do.

■ Therefore, the court finds that Appalachian assumed the obligation under the insurance contract to defend the plaintiff and its officers when they were named as defendants in *Doe v. Shutt.* Since the defendant did not fulfill this obligation, and since the plaintiff admittedly requested Appalachian to assume the defense, the defendant is liable to the plaintiff for the amount the plaintiff expended to defend itself. *City Poultry & Egg Co. v. Hawkeye Casualty Co.,* 297 Mich. 509, 298 N.W. 114 (1941); *Cooley v. Mid-Century Insurance Co.,* 52 Mich.App. 612, 218 N.W.2d 103 (1974).

The third issue is whether the amount the plaintiff paid to the *Doe v. Shutt* plaintiffs in satisfaction of the district court's attorney fees award is covered by the policy. That is, was the attorney fees award "damages" or "costs" within the meaning of Coverage C.

The word "costs" is sketchily defined in the policy as "investigations, adjustments and legal expenses." The court believes this language cannot reasonably be construed to encompass the payment made in satisfaction of the district court's attorney fees award. "Costs" obviously refers only to the expense of carrying on the defense of a lawsuit. It does not refer to sums for which the Insured is found liable.

■ As for "damages", the court is well aware of the so-called American Rule that "attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967). However, the American Rule applies only to the situation where a prevailing litigant is seeking to recover its *own* attorney fees. *See, e.g., Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Summit Valley Industries, Inc. v. Carpenters,* —— U.S. ——, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982).

The issue here is different. It is whether the defendant agreed to pay, on behalf of the City of Ypsilanti, the award of attorney fees assessed *against* the City by the district court in *Doe v. Shutt.* Thus, the issue is simply one of contract interpretation, as there is no law or public policy which would prevent the defendant from agreeing to be liable for awards of attorney fees assessed against its Insured.

The court has not discovered any case interpreting the contract term "damages", either to include or exclude attorney fees assessed against an Insured in litigation with a third party. Therefore, the court is left only with the canons of construction and its own common sense.

■ Words are to be given their plain, ordinary and generally accepted meanings. *Sentry Security Systems, Inc. v. DAIIE,* 394 Mich. 96, 228 N.W.2d 779 (1975). However, any ambiguities in liability insurance policies, particularly those prepared by the Insurer, are to be resolved against the Insurer. *Lintern v. Zentz,* 327 Mich. 595, 42 N.W.2d 753 (1950); *Ocean Accident &*

*Guarantee Corp. v. Old National Bank,* 4 F.2d 753 (6th Cir. 1925).

The court finds that a reasonable person in the position of the Insured would believe that the words "all sums which the Insured shall become legally obligated to pay as damages" would provide coverage for *all* forms of civil liability, including attorney fees. *See, Cieslewicz v. Mutual Service Casualty Insurance Co.,* 84 Wis.2d 91, 267 N.W.2d 595 (1978) (similar language held to encompass punitive damages). It is reasonable to say that an attorney fee award in a civil rights suit is a form of "damage" which the defendant contracted to cover. It would have been simple enough to exclude attorney fee awards had the parties so intended. Since they did not, and since an ambiguity remains, the ambiguity will be resolved against the Insurer.

The court understands that the defendant Appalachian does not contest either the figure of $9,660.59, which the plaintiff paid to its own attorneys to defend *Doe v. Shutt,* or the figure of $12,281.00, which the plaintiff paid to the *Doe v. Shutt* plaintiffs in satisfaction of the district court's attorney fee award. Therefore, summary judgment will enter against the defendant Appalachian Insurance Company in the amount of $21,-849.50, plus interest and costs.

So ordered.