**HYATT CORPORATION, Plaintiff,**

**Crown Center Redevelopment Corporation, et al., Intervenors–Respondents,**

**v.**

**OCCIDENTAL FIRE & CASUALTY CO. OF N.C., et al., Defendant,**

**Columbia Casualty Company, Appellant,**

**The American Insurance Company, Intervenor–Respondent.**

**No. WD 42165.**

Missouri Court of Appeals,
Western District.

Nov. 6, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 2, 1991.

Application to Transfer Denied
Feb. 7, 1991.

Phillip C. Rouse, Kansas City, for appellant.

William H. Sanders, Kansas City, for intervenor-respondent American Ins. Corp.

Judith Ann Whittaker, Kansas City, Norman C. Kleinberg, New York City, for intervenor-respondent Crown Center Redevelopment Corp.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

GAITAN, Judge.

Columbia Casualty Company (Columbia) alleges the trial court erred: (1) by finding that Columbia must indemnify respondents for rescuer claims and defense costs from the construction defendants' fund as a consequence of the collapse of the two skywalks at the Kansas City Hyatt Regency Hotel, and (2) by declaring Columbia's policy permitted coverage for punitive damages and attorney fees in settlement of the federal class actions. We affirm.

## I. Factual History

On July 17, 1981, two skywalks at the Kansas City Hyatt Regency collapsed causing a tremendous loss of life and injury. This appeal is the second between the insurers of the Hyatt Corporation, Crown Center, and Hallmark. The first case was decided in *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348 (Mo.App.1986) (herein referred to as *Crown Center I*). Some background information is necessary for the disposition of this appeal.

On December 6, 1982 with the prior approval of its insurers, Accidental and Commercial Union, the insureds of the Hyatt, Crown Center, and Hallmark entered into a class action settlement agreement (the "state settlements"). These settlements received final approval by the Jackson County Circuit Court on January 6, 1983. Under the terms of the state settlements, the insureds, as the settling defendants, agreed to pay compensatory damages to all class members without litigating liability. In addition, the insureds agreed to undertake to create a class settlement fund, from which supplemental payments would be made to those class members who obtained compensatory damage verdicts, as opposed to settlements, against the settling defendants.

### A. *The Construction Defendants' Funds*

As part of the settlement process with the victims, the insureds also entered into separate agreements with each of the construction defendants, including the general contractor, structural engineers, architects, and others—those with sole or primary responsibility for the acts leading to the collapse. The construction defendants had contractual obligations to indemnify and insure the defense of Crown Center for any liabilities resulting from their acts and to procure insurance for the insureds in connection with the hotel. Pursuant to the agreements with the construction defendants (the "construction defendants agreements"), the insurers of the construction defendants paid over to Crown Center the

remaining limits of their insurance policies which provided coverage to Crown Center and/or Hallmark directly or through indemnity obligations.

In effect, the construction defendants agreements provided a mechanism to put the limited insurance coverage of the construction defendants, to which the insureds were entitled as additional insureds and indemnitees, to work for the insureds and the construction defendants. The carriers in the Occidental and Commercial Union (CU) lines (*see Crown Center I,* 716 S.W.2d at 351) approved the use of the constructions defendants' funds for these purposes and agreed to waive subrogation against the construction defendants.

## B. *The Rescuer Claims*

On August 31, 1984, following consummation of the federal and state settlements, a suit was filed in Jackson County Circuit Court against Hallmark only by Moen L. Phillips, a fireman, who alleged that he suffered physical and emotional damages as a result of his rescue work in the hotel immediately after the skywalks' collapse. On October 10, 1984, Hallmark made a motion to dismiss the Phillips' complaint, principally on the grounds that the plaintiff's complaint was barred by the "fireman's rule." On May 13, 1985, the circuit court granted Hallmark's motion. Phillips appealed to this Court, which reversed the dismissal in a 2–1 decision in April, 1986.

On June 6, 1986, a class action was filed in the federal court on behalf of all rescuers involved in the skywalks' collapse who were legally permitted to recover. Thereafter, 79 similar rescuer cases on behalf of over 150 persons were filed in state court. As had the original plaintiffs who filed suit soon after the skywalks' collapse, the rescuer actions alleged that the insureds were negligent in both the operation and construction of the hotel.

On December 16, 1986, the Missouri Supreme Court unanimously reinstated the judgment of dismissal in *Phillips v. Hallmark Cards, Inc.,* 722 S.W.2d 86 (Mo. banc 1986), thus firmly establishing a bar to rescuer claims brought by fireman and policemen. *Id.* at 89. Following the Supreme Court decision in *Phillips,* the *Jacob* complaint was amended to limit the proposed class to plaintiffs other than policemen and firemen. Individual rescuer suits brought in state court by policemen and firemen were also dismissed voluntarily. In March 1990, in *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 711 (Mo. banc 1990), the Missouri Supreme Court held that other professional rescuers (such as an ambulance attendant) could recover for injuries sustained in a rescue effort. *Id.* at 713.

Based on experience from earlier litigation, the insureds' counsel advised settling the rescuer claims which involved the most severe injuries; those brought by Joseph Waeckerle, a physician, and Michael Allman, a jackhammer operator. A settlement of the federal class action was negotiated, and the action was settled on behalf of all rescuer plaintiffs other than firemen and policemen, including the rescuers who had filed in state court. The federal court gave final approval to the settlement agreement on December 15, 1987.

Beginning in May, 1986, the insureds promptly forwarded to Columbia and American, the insurance carriers then on line, information about potential rescuer claims; including the claims of Waeckerle and Allman. This information was filed with American and Columbia in the same manner as information on the hundreds of skywalk claims previously settled. Consistent with this practice, Columbia and American were sent a copy of the *Jacob* petition. American quickly approved the rescuer settlements, and tried, unsuccessfully, to secure Columbia's approval.

On July 25, 1986, Columbia denied coverage for all rescuer claims, contending that the insureds were not additional insureds under its policy and that the Columbia policy necessarily excluded the rescuer claims. At the same time, Columbia advised American, which had already approved the Waeckerle and Allman settlements, that it would not contribute to the rescuer settlements. These settlements were consummated in August, 1986. Notwithstanding

its denial of coverage, Columbia was kept fully informed of the ongoing rescuer settlement process.

To date, Columbia has declined to pay any of its pro-rata share of any of the rescuer settlements, which in the aggregate total $419,830.86. American timely paid its one-third share of the initial settlements. Thereafter, given Columbia's refusal to pay, and approval from American, the insureds paid the rescuer settlements out of the construction defendants' funds. Under the terms of a previous agreement, any residue was ultimately to be distributed to American and Columbia pro-rata from that fund.

## C. *The September 1, 1983 Agreement*

On the eve of the hearing on the motion for summary judgment, and after lengthy conferences before the trial court, Columbia, American and the insureds entered into an interim understanding governing how Columbia would fund its obligations under the October 7, 1982 order (*see Crown Center I*, 716 S.W.2d at 353) entered by the trial court. Columbia agreed to pay claims and judgments on the pro-rata formula of the October 7 order: In return, the insureds agreed that Columbia would not have to fund its share of skywalk settlements and judgments until after the exhaustion of certain sums advanced by the construction defendants and American.[1] The parties' agreements were outlined in a written document reached in the presence of the trial court on September 1, 1983. Paragraph nine of that agreement further provided that the insurance carriers who last funded the settlements would receive any amounts remaining in the funds. This was only to occur, however, after, *inter alia*, (1) "*all* claims are settled and paid;" (b) "*all* judgments are satisfied;" (c) "all supplemental payments under the class settlement agreements have been paid;" and (d) "all costs Crown Center is obligated to pay under agreements with the construc-

tion defendants have been paid." (Emphasis added).

In addition, paragraphs 7 and 8 of the September 1 agreement provided that the insureds could use the construction defendants' funds to fund "its agreements with the construction defendants." The agreements with the construction defendants which were before the trial court provided that the insurance proceeds were "for use by Crown Center to satisfy Crown Center's obligations under the settlement agreement ... *or with respect to any other arrangement for settling plaintiffs' claims arising out of the skywalks' collapse.*" (Emphasis added).

When the carriers in the CU and Occidental lines were no longer obligated to pay defense costs, Columbia and American agreed that the insureds were also entitled to use the construction defendants' funds for their defense costs. Columbia twice unequivocally acknowledged on the record before the trial court that "Columbia has no objection to Crown Center's use of the construction defendants' insurance proceeds held by Crown Center to pay defense costs for Stinson, Mag and Waldeck." Columbia later attempted, however, to avoid the terms of both agreements.

## D. *Columbia's Obligation to Pay its Share of the Federal Settlements*

Following the consummation of the federal settlements, Columbia refused to pay its share due under the terms of the settlements: Attorneys' fees of plaintiffs' counsel and supplemental compensation due with respect to three class members who had pursued arbitration of their claims. In order to avoid the insureds' defaulting under the federal settlements, American advanced Columbia's two-thirds' share on behalf of the insureds. Thereafter, the insureds and American moved for summary judgment on January 11, 1984, seeking judicial enforcement of the October 7 order, so that Columbia would comply and pay its share of the federal settlements under its

---

1. The sums that were available for funding settlements before Columbia was to pay were $7.5 million from the construction defendants' funds, and $3.7 million to be advanced out of turn by American.

policy, the October 7 order, and the September 1 agreement. This motion of the insureds and American was among those ultimately granted in the order appealed.

Because of Columbia's aforementioned denial of coverage for all rescuer claims, on August 12, 1986, the insureds filed another summary judgment motion, seeking an order declaring that Columbia was obligated to pay its share of rescuer settlements and judgments.

In *Crown Center I*, our opinion upheld the trial court's grant of summary judgment, holding that: Hallmark and Crown Center are insureds under Columbia's policy, the policy is "general comprehensive, covering all hazards and risks," and that the proper formula for prorating payments between the two lines of insurance was two-thirds for the Occidental line and one-third for the CU line. 716 S.W.2d at 364, 366–67.

### E. *The 1986 Columbia Declaratory Judgment Action*

On October 8, 1986, Columbia commenced a separate action (the "Columbia action"), in the Circuit Court of Jackson County, Missouri, naming as defendants Crown Center, Hallmark, and Hyatt. The complaint sought, *inter alia* : (1) a declaration that the insureds were not entitled to coverage for rescuer claims, that Columbia's policy did not provide coverage for construction and design defects, and that Columbia's policy did not provide coverage for negligence or other misconduct prior to 1980; (2) a declaration that Columbia was excused from any obligation to fund past settlements of rescuer claims by virtue of the alleged failure of the insureds to obtain prior approval of Columbia for settlements entered; (3) a declaration that the insureds breached the September 1 agreement by using proceeds of the construction defendants' funds to pay defense costs and rescuer settlements; and (4) an accounting with respect to, and distribution of the proceeds of, the construction defendants' funds. On November 24, 1986, the insureds successfully moved to transfer the Columbia action to Judge O'Leary, to consolidate that action with the Hyatt action, and to dismiss Columbia's petition.

### F. *The Appealed Decision*

The Columbia action was transferred to Judge O'Leary on motion by the insureds. Holding that the "parties to both actions are the same in all pertinent respects, and that the actions involve many common questions of law and fact," the trial court consolidated the Columbia action with the insureds' 1981 declaratory judgment action. The trial court granted summary judgment against Columbia, dismissing its claims in the Columbia action. Dismissal included Counts I and II with respect to coverage of the rescuer claims under the Columbia policy and the insureds' handling of the rescuer settlements. Further, in granting summary judgment to the insureds, the trial court declared Columbia's obligation to pay its share of the rescuer and federal settlements. The court also granted summary judgment against Columbia in Count III, which sought a declaration that the insureds had improperly used the proceeds of the construction defendants' funds to fund rescuer settlements and defense costs. Rejecting *all* of Columbia's arguments as to, *inter alia*, the coverage of the rescuer claims and the insureds' handling of the rescuer settlements, the trial court held as follows:

[1] that the Columbia policy covers all rescuer claims and Columbia is required under that policy and prior judicial rulings to pay 2/3 of all rescuer claims (October 7 order);

[2] that none of the insureds' settlements of these claims violated a condition of coverage under the Columbia policy;

[3] that Columbia is obligated under its policy to pay its pro-rata share of settlements and judgments entered in the federal class action litigation before Judge Wright;

[4] that American is entitled to recover the sum of $686,020.06 from Columbia, representing amounts previously paid by American under protest to cover Columbia's unpaid 2/3 share of the set-

tlements and judgments in the federal class action, together with interest thereon from the dates of payment;

[5] that defense costs incurred by Stinson, Mag & Fizzell and the Waldeck firm in connection with all skywalk cases, including rescuer cases, are properly paid from the proceeds of insurance policies constituting the construction defendants' funds; and

[6] that the insureds were authorized to use the construction defendants' funds to pay Columbia's 2/3 share of rescuer settlements, when Columbia refused to do so.

## II. Analysis

### A. *Rescuer Claims*

■ The rescuer claims are within the scope of both the 1981 declaratory judgment action and this Court's prior decision. *Crown Center I* unanimously held that the Columbia policy covered *all* hazards and risks with respect to the hotel:

The policies in both lines were general comprehensive, covering all hazards and risks. Though the language in the various policies was not identical, the individual policies provided the broadest form of coverage available to the insureds. Columbia's attempt to characterize one line of coverage as specific and the other as general is not well taken. The policies did not restrict losses to specified risks but covered all hazards and risks at the hotel located on Hallmark and Crown Center property.

716 S.W.2d at 364.

Columbia's insistence that the rescuers' claims did not exist at the time of *Crown Center I* and therefore, are not covered by the decision is without merit.

None of the original petitions were exclusively restricted to claims brought by business invitees. Both petitions were couched in broad language which put Columbia and the other insurers on notice that Hyatt, Crown Center and Hallmark were seeking adjudication of the insurers' obligations with respect to all conceivable claims arising from the skywalks' collapse. For example, the operative prayer for relief in Hyatt's petition sought a determination of insurance coverage "with respect to claims resulting from the bodily injuries and deaths of those people who were injured or died as a result of the occurrence on July 17, 1981, at the Hyatt Regency Hotel in Kansas City, Missouri." The Hallmark/Crown Center petition likewise sought a judgment declaring that the policies in the CU and Occidental lines provide coverage "for any and all claims for compensatory or punitive damages arising out of the Event." The trial court held that "[t]his language is expansive enough to include rescuers, all of whom claimed injury as a result of the collapse of the skywalks." We agree.

Without citation to the record, Columbia asserts that "[t]he fact that the business invitee claims alleged 'negligent design, construction *and operation*' distinguished them from the rescuer claims."[2] Columbia fails to disclose, however, that the rescuer claims include the very same allegations.

For the purpose of determining insurance coverage, there is no relevant difference between the claims of the rescuers and of those injured or killed by the skywalks' collapse. The trial court, in its order of June 20, 1989, thus found that:

Columbia's factual premise that the rescuer claims *only* allege negligent construction and design is also without merit. As in the original skywalk cases, the rescuer claims allege, in addition to negligent construction and design, the Insureds' negligent failure to monitor, maintain, test, repair, and inspect the skywalks.

Consequently, both sets of claims triggered insurance coverage under both the CU and Occidental lines' policies. Columbia asserts that the Occidental line provided coverage only for "premises-operations," and that since the rescuer claims supposedly allege only negligence in construction, it is not liable for the rescuer settlements. Colum-

---

2. The "business invitee claims" refer to those actions which sought recovery for injuries suffered by individuals in the skywalks' collapse, not the ensuing rescue effort.

bia made the same arguments in its prior appeal before this Court four years ago.

In Missouri, the standard to be adopted in determining whether a party is barred from relitigating an issue which has previously been decided is:

> "(1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.... Most courts have added a fourth factor ... Whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit...."

*Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo. banc 1984) (quoting *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. banc 1979)); *see also Jacobs v. Corley*, 732 S.W.2d 910, 913 (Mo.App.1987); *Consumers Oil Co. v. Spiking*, 717 S.W.2d 245, 249 (Mo.App.1986). In the *Crown Center I* appeal, this Court squarely rejected Columbia's argument that its policy provided coverage only for "premises-operations." 716 S.W.2d at 364. Further, *Crown Center I* was an adjudication on the merits of the insurance coverage available to the insureds. Columbia was a defendant-appellant in *Crown Center I.* Therefore, Columbia is collaterally estopped in this appeal from arguing that its policy coverage is limited only to "premises-operations."

### B. *Settlements of the Rescuer Claims*

■ Another argument for avoiding coverage of the rescuer settlements promulgated by Columbia involves their contentions that it did not receive adequate notice of the claims and settlements; that it did not consent to the settlements; and that the settlements were unreasonable in amount. As the trial court held, Columbia has no standing to contest the rescuer settlements because "Columbia's decision to deny coverage for these claims, which it did on a blanket basis on July 25, 1986, freed the Insureds to handle the claim in the best way they saw fit." However, Columbia received notice of the claims and settlements. Any lack of knowledge on Columbia's part was a result of its refusal to follow up on the notice provided.

It is well established that after a denial of coverage the insured has a "free hand to proceed, as soon as practicable, in his own way" and "make the best settlement he can," *Bituminous Casualty Corp. v. Walsh & Wells, Inc.*, 170 S.W.2d 117, 122 (Mo.App.1943), and the insurer will be bound by such settlement and may not thereafter complain of the manner of the settlement "absent collusion or bad faith." *Western Casualty & Sur. Co. v. Southwestern Bell Tel. Co.*, 396 F.2d 351, 355 (8th Cir.1968); *see Southwestern Bell Tel. Co. v. Western Casualty & Sur. Co.*, 269 F.Supp. 315, 318 (E.D.Mo.1967), *modified,* 396 F.2d 351 (8th Cir.1968).

■ Columbia's blanket denial of coverage falls squarely within these rulings. There is nothing unfair in this result. Columbia's challenges to the reasonableness of the settlements are both irrelevant and patently meritless. Missouri law requires that settlements be free of collusion and bad faith, but does not require the insured, as a condition of reimbursement, to prove that it is ultimately liable for the settled claims. In negotiating a settlement an insured need only be able to:

> take into consideration *the likelihood of success or failure,* the cost, *uncertainty,* delay, and inconvenience of trial as compared with the advantages of settlement.

*Berke Moore Co. v. Lumbermens Mut. Casualty Co.*, 345 Mass. 66, 71, 185 N.E.2d 637, 639 (1962) (Emphasis added).

■ Columbia lacks standing to complain of the reasonableness of the rescuer claims for the further reason that it breached its duty to consider offers of settlement in good faith. Under Missouri law, a carrier in Columbia's position owes a good faith duty to consider offers of settlement which are within the limits of its policy. *Herman v. Western Casualty & Sur. Co.*, 271 F.Supp. 502, 505–06 (E.D.Mo.1967), *aff'd,* 405 F.2d 121 (8th Cir.1968); *Landie v. Cen-*

*tury Indem. Co.,* 390 S.W.2d 558, 564–66 (Mo.App.1965). This good faith obligation exists regardless of whether the insurer actually undertakes the defense of its insured. *Id.*

■ Where an insurer breaches its good faith duty to consider offers of settlement, the insured may effect reasonable good faith settlements on its own and enforce such settlements against the insurer. *E.g., National Union Fire Ins. Co. v. Continental Illinois Corp.,* 673 F.Supp. 267, 273 (N.D.Ill.1987); *Fireman's Fund Ins. Co. v. Security Ins. Co.,* 72 N.J. 63, 73, 367 A.2d 864, 869 (1976); *see Isadore Rosen & Sons, Inc. v. Security Mut. Ins. Co.,* 31 N.Y.2d 342, 348, 339 N.Y.S.2d 97, 101, 291 N.E.2d 380, 383 (1973).[3]

Given the risks posed by the lengthy series of drawn out rescuer trials, the "inconvenience of trial" was clearly outweighed by the "advantages of settlement." As the trial court held:

> when viewed from the time and under the circumstances in which they were negotiated, there is no material question of fact that *all* of the Insureds' rescuer settlements were reasonable.... In [the *Phillips*] decision, the Court of Appeals held that rescuers' claims arising out of the skywalks' collapse, including those of firemen, were not automatically precluded under Missouri law.

(Emphasis in original). The trial court also noted that the insureds' rescuer settlements were impelled by the uncertain future of the *Phillips* decision,[4] and the "desire to avoid protracted litigation." These rescuer settlements were negotiated, recommended and implemented by the *same* attorneys selected and approved by the insurers. All seven of the insurance companies approved of the procedure and cooperated with all settlements. We believe Columbia's appeal on this point to be meritless.

### C. *Statute of Limitations*

■ Columbia asserts that "[o]ver Columbia's objections, Hallmark and Crown Center waived the defense of the statute of limitations." Columbia suggests that some of the rescuer settlements involved claims which were barred by the statute of limitations. Columbia does not dispute, however, that the *Jacob* class action was initially filed on June 6, 1986, and an amended class complaint was filed on July 16, 1986, both *prior to* the expiration of the statute of limitations on July 17, 1986. These class action complaints tolled the statute of limitations on behalf of *all* putative rescuers, including those who subsequently filed their own actions or settled individual claims during the pendency of the *Jacob* class action. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 2152 n. 13, 40 L.Ed.2d 732 (1974); *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). No payments were made to any claimant—not included in the *Jacob* class action—who filed a suit or asserted a claim after the expiration of the statute of limitations.

### D. *Zone of Danger*

■ Columbia, citing to *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo. banc 1983), also claims that the rescuers had to be within a "zone of danger" in order to recover for emotional distress. However, there is no zone of danger test in Missouri. In *Bass,* the Supreme Court of Missouri held that:

> a plaintiff will be permitted to recover for emotional distress provided: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of

---

**3.** This appears to be the holding of "all the courts that have considered the question." *National Union,* 673 F.Supp. at 274.

**4.** *Phillips v. Hallmark Cards, Inc.,* 722 S.W.2d 86 (Mo. banc 1986).

sufficient severity so as to be medically significant.

646 S.W.2d at 772–73 (footnote omitted).

This test clearly demands that the defendant be negligent and that the plaintiff suffer tangible injury. As conclusively shown above, that is exactly what the various rescuer complaints alleged. Had the rescuers been allowed to proceed to trial, they would have had the opportunity to try to meet the test set forth in *Bass.*

### E. *Granting of Summary Judgment*

■ Columbia's contention that the insureds improperly used the construction defendants' funds for their defense costs is directly contradicted by its own binding judicial admissions in open court. The trial court correctly noted that:

Columbia explicitly acknowledged on two occasions that the Insureds' costs in defending claims arising out of the skywalks' collapse could be paid out of the Construction Defendants' Funds. At the beginning of the hearing held in this Court on October 3, 1983, Ms. Whittaker, Assistant General Counsel for Hallmark, read into the record the following stipulation, to which Columbia's attorney, Mr. Fuller, consented, concerning how the Insureds' defense costs were to be funded: 'Columbia has no objection to Crown Center's use of the construction defendants' insurance proceeds held by Crown Center to pay defense costs for Stinson, Mag and Waldeck....'

Columbia made a unequivocal admission on the record that it agreed to the use of the construction defendants' funds for the insureds' defense costs payable to the two law firms selected by the insurers to defend the insurers and Hyatt; Stinson, Mag & Fizzell and Niewald, Waldeck, Norris & Brown. This was understandably considered dispositive by the trial court. Only two-and-a half weeks later an exchange took place in the trial court in which Mr. Fuller, Columbia's defense counsel, again agreed to the insureds' use of the construction defendants' funds for defense costs:

MS. WHITTAKER: Well, the defense costs I mentioned specifically were *Crown Center's and Hallmark's defense costs in handling the remaining skywalk claims; any litigation arising out of the skywalk litigation, we were to be able to pay our defense costs, Hallmark's and Crown Center's, out of the construction defendants' funds, prior to any other disbursements therefrom.*

In addition—

MR. FULLER: *Excuse me, just so we get this in context, the defense costs were for Stinson, Mag and Berkowitz,* right?

MR. KLEINBERG: *Waldeck.*

MR. FULLER: *Excuse me, Stinson, Mag and Waldeck, period.*

MS. WHITTAKER: That's right.

MR. EGAN: Their fees and expenses.

MS. WHITTAKER: And in addition to that, there are the items that Mr. Fuller referred to in paragraph 9–E of the September 1, 1983, agreement—it is actually paragraph 9–E of the August 31, 1983 outline.

MR. FULLER: On the margin.

MS. WHITTAKER: Now, such funds as are released will be applied first—

THE COURT: All right. Before you get the release and how they are to be applied, is everything agreeable so far?

MR. FULLER: Well, what we have simply said is that the charges against the fund will be computed by Mr. Egan [General Counsel for Hallmark] to determine what the balance is on or before February 1, 1984. And apparently, they have outlined these specific things, defense costs of Stinson, Mag and Waldeck, and all of the items in paragraph 9 of the original agreement.

THE COURT: *All right. And you agree that that's correct so far?*

MR. FULLER: *That's right.*

(Emphasis added).

As the transcript indicates, Columbia's counsel stated that the insureds' defense costs for litigating all remaining skywalk claims were to be "paid out" against the construction defendants' funds.

Columbia is thus judicially estopped from challenging the insureds' use of the construction defendants' funds for this purpose. *See Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987).

The trial court's holding that Columbia consented to the insureds' use of the construction defendants' funds for defense costs was an exercise of his power to enforce an agreement made in the litigation before him. Neither Crown Center nor American was required to bring a separate action or motion enforcing Columbia's agreement to the payment of defense costs. It is well settled that an agreement entered into in an action may be enforced by motion in that action without the need for a new lawsuit. *See Wenneker v. Frager*, 448 S.W.2d 932, 936 (Mo.App.1969) ("The general rule .. is that settlements 'may ordinarily be enforced by petition or motion in the original action' "); *Southwestern Bell Tel. Co. v. Roussin*, 534 S.W.2d 273, 275–76 (Mo.App.1976) (pretrial settlement enforceable by motion for specific performance); *Leon Indus., Inc. v. I.C.N. Pharmaceutical*, 472 F.Supp. 1241, 1242 (E.D.Mo.1979) (court "has inherent power to enforce a settlement agreement").

The trial court had all material facts in its possession. Columbia consented to the use of the construction defendants' funds for defense costs. The trial court had the jurisdiction to enforce this agreement between the parties on that issue. Therefore, his grant of summary judgment on Count III of the *Columbia* complaint was proper and is affirmed.

### F. Construction Defendants' Funds for Defense Costs

Columbia argues that this court's holding in *Crown Center I*, that Columbia's policy did not provide for defense costs, 716 S.W.2d at 365, carried with it a *sua sponte* declaration that other coverage available to Crown Center for such costs was not possible. The construction defendants' insurance, which was not at issue in that appeal, was available to the insureds both by consent of Columbia and American and as a

matter of law. In making this argument, Columbia relies on a section of the Court's prior opinion which considered whether the Highlands policy, which provided for defense costs and was in excess of Columbia's policy in the Occidental line, should drop down. This Court presented the issue in the following terms:

> Where an insurance company, which is part of a line of insurance, provides indemnity coverage but specifically eschews defense obligations, is the next carrier in the line that provides defense coverage required to pay defense costs for the preceding liability phase as well as its own liability phase?

716 S.W.2d at 365.

This Court held that the next carrier in the Occidental line—namely Highlands—should not drop down, because "[t]here was no language in the Highlands policy requiring it to fill in defense gaps left by the Columbia policy." *Id.* at 366. The Court also held that the American policy in the CU line, which was then on line, did not provide defense costs. That was the full extent of this Court's holding as to defense costs. Columbia attempts to twist this limited holding into a broad declaration that the insureds are *not* entitled to use, for defense, the proceeds of other policies (under which they were additional insureds), which were in neither the CU line nor the Occidental line and which were not even before the Court. Its argument fails, however, because this Court ruled only upon the policies before it. The policies issued to contractors and subcontractors, proceeds of which made up the construction defendants' funds, were not before this Court when it ruled in *Crown Center I*. Nothing in that opinion foreclosed their use for defense.

### G. Conversion of the Insureds' Motion to Dismiss

█ Seeking to avoid the effects of the above-cited judicial admissions and of the undisputed evidence in the record against all of its claims, Columbia argues that the trial court should have applied a Rule 55.-27(a)(6) standard and accepted all of its

unfounded allegations as true. As part of the consolidation of the *Hyatt* and Columbia actions, the trial court converted the insureds' motion to dismiss those counts of Columbia's complaint dealing with defense costs and a request for an accounting into a motion for summary judgment. Columbia contends that it was not notified that the insureds' motion to dismiss was being converted to one for summary judgment, and that therefore a liberal motion to dismiss standard must be applied to its complaint. It also contends that it is "entitled" to discovery on issues regarding the payment of defense costs and rescuer claims. It is axiomatic that when a party introduces evidence beyond the pleadings, a motion to dismiss its complaint is *automatically* converted to a motion for summary judgment. In *Shafer v. Western Holding Corp.*, 673 S.W.2d 117, 119 (Mo.App.1984), this Court held that a plaintiff "should have known that, under Rule 55.27(a), when he presented evidence beyond the pleadings, the motion was thereby converted into a motion for summary judgment." *Id.* at 119; *see also Williams v. Saint Joe Minerals Corp.*, 639 S.W.2d 192, 195 (Mo. App.1982).

Columbia complains of a lack of formal notice years after it used its suggestions in the Columbia action as vehicles for the submission of a file drawer of evidence. Columbia was not "surprised" by the grant of summary judgment. It had the opportunity to submit evidentiary support in numerous pleadings, and it took advantage of that opportunity. Columbia cites two principal cases to bolster its claim that the trial court somehow failed to notify it of the conversion of the insureds' motion to dismiss into one for summary judgment. Both are inapposite. In *American Drilling Serv. Co. v. Springfield*, 614 S.W.2d 266 (Mo.App.1981), the court held a Rule 55.27(a)(6) standard applied when the defendant filed a "joint and alternate presentation to the court of a motion to dismiss ... and a motion for summary judgment." *Id.* at 269 (Emphasis omitted). The trial court did not consider any matters beyond the pleadings, and did not rule on the motion for summary judgment. *Id.* at 271.

Likewise, in *Gramlich v. Travelers Ins. Co.*, 640 S.W.2d 180 (Mo.App.1982), the court, finding that the plaintiff was denied notice that a motion to dismiss was converted to one for summary judgment, held that "[t]here is no evidence that the [evidence beyond the pleadings] was formally presented to and considered by the trial court." *Id.* at 183. These cases have nothing to do with a situation like the one currently before the Court, in which both sides submitted evidentiary material on their motions.

There was no relevant factual issue to be determined with respect to Columbia's obligation to pay claims arising out of the skywalks' collapse, including those of rescuers. The trial court properly held discovery unnecessary to resolve the pending motions, and granted summary judgment to the insureds on Count III of Columbia's complaint because Columbia had utterly failed to raise by affidavit, in accordance with the rules, any genuine issue of fact supporting its claims. Columbia made the very same argument in connection with its prior appeal in *Crown Center I;* that argument was rejected then as well.

The trial court found no further need for discovery. Its determination is given deference, because a "trial court's determination of the relevancy of a discovery request is subject to reversal only upon a showing of abuse of discretion." *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 828 (Mo. banc 1984) (Missouri Supreme Court affirmed limitation on discovery, noting that party seeking discovery bears burden of showing "relevancy and materiality of documents sought to be discovered and that they are reasonably calculated to lead to the discovery of admissible evidence").

Columbia has not made a showing as to any denial of any discovery request likely to lead to the production of evidence affecting the outcome of the trial court's rulings.

### H. *Columbia's Request for an Accounting*

The Court properly refused to enter an order directing the insureds to give an accounting. There was no case or controver-

sy in regard to this issue, because Crown Center has been providing accountings regularly since first ordered by the court to do so, (June 20, 1989) together with supporting documents when requested. Columbia has not challenged whether any payment was actually made or the reason therefor, but has only challenged the categories of payment (to rescuers and for defense costs). Crown Center has made accountings. No order is required to that effect because Crown Center has been providing such information and there is no reason to believe that will not continue.

Columbia attacks the insureds for failing to distribute the balance of the construction defendants' funds. This attack is premature. The reason for the disagreement is that American advanced funds that should have been paid by Columbia for the federal settlements. American seeks reimbursement for those amounts before any further amounts are distributed to Columbia. The insureds cannot distribute the remainder of the funds until Columbia and American can agree on a division or until this Court so orders.

I. *Punitive Damages*

In granting summary judgment to American and the insureds, the trial court held that Columbia was obligated to pay its two-thirds share of the federal settlements (including attorneys' fees and court costs) in the federal class action litigation. Columbia has refused to comply, citing that the federal settlements constituted punitive damage payments excluded from coverage by the terms of its policy, and that it is not obligated to pay for the attorneys' fees awarded in the federal class action.

On January 30, 1984, Judge Wright entered an order refuting the characterization of any part of the federal settlements as a punitive damage award:

... [T]he characterization of the Settlement Fund as a punitive damage fund is inaccurate. There have been no provisions for the award of punitive damages in this case, as the Settlement Agreement expressly provides that the settling defendants deny liability for punitive

damages. Neither the basic funds, the contingency funds nor the supplemental compensation can be considered as punitive damages, as paragraph 11 of the Agreement provides for the dismissal of all punitive damage claims of the class members arising out of the Skywalks collapse.

*In re Fed. Skywalk Cases,* No. 81–0945, at 4 (W.D.Mo. Jan. 30, 1984) (order denying modification of federal class action settlement agreement).

As Judge Wright pointed out, the settlement agreement specifically stated that payments thereunder were not in lieu of punitive damages. Judge Wright's statement is enough to settle this dispute once and for all. Columbia's contention that Judge Wright somehow retracted the above-quoted statement is unfounded.

Further, Columbia is barred from raising these arguments by collateral estoppel. The trial court, in its October 7, 1982, and February 28, 1985, orders, held that Columbia was obligated to pay two-thirds of all "settlements and judgments." This Court affirmed the trial court's holding in its *Crown Center I* opinion. Perforce, these holdings extended to the federal settlements, which, after its approval by the federal court on January 31, 1983, became an enforceable judgment against the insureds.

Columbia will not now be allowed to escape its policy obligations by mischaracterizing the nature of the federal court awards.

The principal amounts at issue with respect to the federal class action are not the settlements paid to plaintiffs but Columbia's share of attorneys' fees awarded in the federal class action as part of the settlement of the case. Such an award of attorneys' fees is indistinguishable from a damages award for coverage purposes. *See Ypsilanti v. Appalachian Ins. Co.,* 547 F.Supp. 823 (E.D.Mich.1982), *aff'd mem.,* 725 F.2d 682 (6th Cir.1983). In *Ypsilanti* the district court found:

that a reasonable person in the position of the insured would believe that the

words 'all sums which the Insured shall become legally obligated to pay as damages' would provide coverage for *all* forms of civil liability, including attorneys' fees. *See, Cieslewicz v. Mutual Service Casualty Insurance Co.,* 84 Wis.2d 91, 267 N.W.2d 595 (1978) (similar language held to encompass punitive damages).

547 F.Supp. at 828. *Ypsilanti* involved fees authorized under a civil rights statute rather than a class action rule, but is on all fours with this case on the dispositive question of policy interpretation.

Seeking to avoid the consequences of the inevitable holding that its policy does cover court-awarded attorneys' fees, Columbia mounts a collateral attack on the award of attorneys' fees as violating the "American Rule." As the trial court held, this attack is without foundation:

> Nor is there any merit to Columbia's argument that the Federal Court's award of plaintiffs' attorneys' fees somehow violated the so-called 'American Rule.' It is common class action practice for the defendants in a class action settlement to agree to pay such plaintiffs' attorneys' fees and expenses as the court may award. In accordance with this practice, paragraph 8 of the Federal Settlement authorized the Federal Court to award such plaintiffs' attorneys' fee [sic] and expenses as it deemed proper.

The trial court's grant of summary judgment holding that Columbia's policy provided coverage for the federal settlements was entirely proper and should be affirmed.

For the aforesaid reasons, the judgment of the trial court is affirmed.

All concur.